21 N.J. Super. 112 (1952)
90 A.2d 889
DOROTHY MILLER, PETITIONER-APPELLANT,
v.
BILL MILLER'S RIVIERA, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 14, 1952.
Decided August 6, 1952.
*113 Before Judges SMALLEY, PROCTOR and HANEMAN.
Mr. Joseph Lieberman argued the cause for the appellant (Messrs. Greenbaum & Greenbaum on the brief).
Mr. Arthur F. Mead argued the cause for the respondent (Messrs. Cox & Wahlberg, attorneys).
The opinion of the court was delivered by SMALLEY, J.S.C.
This is a workmen's compensation case. The Bureau dismissed the claim, and since the accident in which the deceased was injured and subsequently died occurred in the State of Florida, the appeal is direct to this court from the determination of the Bureau.
The sole question to be determined is, did the decedent's death result from the accident which arose out of and in the course of decedent's employment with the respondent-corporation. There is little dispute as to many of the facts. The application of the pertinent rules of law to these facts, however, furnish the real dispute for determination.
The petitioner is the widow of Joseph Miller. Joseph Miller was a brother of William Miller who was and is president *114 and the principal stockholder of Bill Miller's Riviera, Inc., a corporation which operates a restaurant night club in Fort Lee in this State. This corporation is the respondent.
The deceased lived with his wife, the petitioner, and two children in Brooklyn, New York. He was employed as a night steward at the respondent's place of business. His duties have been described as "to make sure that everything ran right at the Riviera in the kitchen."
On or about the 4th day of November 1950, decedent left his home for a vacation in Florida. He accompanied Abe Vine, his brother-in-law, and the Vine family in the Vine automobile. Abe Vine was also employed by the respondent company. The vacation period extended approximately six weeks, the Riviera then being closed, and to open on New Year's Eve.
Some time before December 19, 1950, William Miller, who had also come to Florida in his automobile, and the deceased met in Florida. There was conversation between both Millers and some instruction for the deceased to drive the personal automobile of William Miller back to New York or to Fort Lee. On December 19, 1950, Abe Vine, driving his own automobile, and the deceased, driving his brother's personal automobile, started back on their trip north. They stopped on the way up between Miami and St. Augustine, namely, at Cocoa, Florida, and a purchase of six boxes of fruit for shipment to the Riviera at Fort Lee, was made. It is to be noted that Abe Vine was the purchasing agent of the respondent corporation and made the purchase at William Miller's direction, although no particular direction as to the place of purchase was given.
Both Vine and the deceased stayed at St. Augustine overnight and left the next morning around 5 o'clock. Vine was operating his automobile and the deceased was operating his brother's, William Miller's, automobile. Vine saw a car coming in the opposite direction with one headlight. He pulled over to the shoulder of the road. This oncoming car, however, came into collision with the automobile operated by *115 the decedent, Joseph Miller. It is admitted that Miller expired on December 23, 1950 by reason of the injuries sustained in this collision.
William Miller testified that his brother was on the payroll of the respondent corporation from the time that he, Joseph Miller, left Miami. There is some dispute as to this by Dolan, a bookkeeper of the respondent corporation, who testified that Vine and the deceased automatically were placed on the payroll of the respondent the week ending December 25, 1950, even though the bookkeeper, Dolan, would not know of the whereabouts of Vine or the deceased, this being the customary practice of putting certain key employees on the payroll a few days ahead of the opening of the night club on New Year's Eve; it being explained that it was necessary for certain of the employees to be in and about the premises a few days prior to any opening.
William Miller, in disputing the testimony of Dolan, dismissed Dolan's testimony lightly by saying that Dolan was confused. There is no dispute, however, that the vehicle that the decedent was operating was the personal automobile of William Miller. A reading of the record discloses that the deputy commissioner was in no wise impressed with the testimony of William Miller but, to the contrary, was impressed with the testimony of Dolan.
These are the facts that present the question of whether or not petitioner's decedent suffered an accident arising out of and in the course of employment.
There is no possible doubt that the decedent came to Florida for a vacation; that he stayed some six weeks or more in Florida on this vacation; that his work and duties at the respondent's place of business was that of a night steward at respondent's night club in Fort Lee, New Jersey, a work of a certain nature and at a certain place. Like any employee, if he is to resume his employment, he must return from the place of vacation and get back to his home and his place of employment.
*116 We, too, feel that the effort that the deceased's brother, William Miller, made before the Bureau below to put his brother on the business of the respondent corporation, does not stand up under the test of truth and reasonableness. Rather, are we convinced that the driving of William Miller's automobile by petitioner's decedent was solely for the convenience of William Miller, individually, and not in any way connected with his employment as a night steward for the respondent corporation in New Jersey.
In Bryant v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913), that court perhaps best laid down the rule which furnishes the yardstick wherein the particular facts here may be measured.
Page 76:
"It remains to be considered whether the accident arose both `out of and in the course of his employment.'
For an accident to arise out of and in the course of the employment, it must result from a risk reasonably incidental to the employment. * * *
We conclude, therefore, that an accident arises `in the course of the employment' if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time. * * *"
Page 78:
"We conclude, therefore, that an accident arises `out of' the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it."
Applying this rule to the facts here, it may not be said that this accident resulted from a risk reasonably incidental to the employment, nor conclude that petitioner's decedent was doing at the time of the accident what he was reasonably employed to do within the time or place of employment.
The determination and judgment of the Bureau below is affirmed.