THE FIDELITY AND CASUALTY COMPANY OF NEW YORK ET AL., APPELLANTS, v. RUTH KENNARD, APPELLEE.

75 N. W. 2d 553

Filed March 16, 1956. No. 33914.

*Brown, Crossman, West, Barton & Quinlan,* for appellants.

*Schrempp & Lathrop,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action was commenced by the Fidelity and Casualty Company of New York, the insurance carrier for workmen's compensation for the Castle Hotel Company, a limited partnership, and the Boss Hotels Company, a corporation, in the Workmen's Compensation Court, the Castle Hotel Company and the Boss Hotels Company being brought into the action as parties plaintiff, against Ruth Kennard, an employee of the Castle Hotel Company who was injured in an accident claimed by the plaintiffs to have arisen out of and in the course of her employment, as defendant. Hearing was had before a judge of the Workmen's Compensation Court. Thereafter an award was entered in favor of the defendant. From the award and judgment of the said court, the defendant appealed to the district court. Trial was had in the district court. The district court entered judgment finding that the accident to Ruth Kennard concerned therein was not within the provisions of the Nebraska Workmen's Compensation Act. The judgment of the Workmen's Compensation Court was vacated and set aside. The Fidelity and Casualty Company of New York, Boss Hotels Company, a corporation, and the Castle Hotel Company, the employer, filed a motion for new trial. The motion for new trial was overruled. From this ruling said parties appealed to this court.

For convenience we will hereinafter refer to Ruth Kennard as Kennard, or as appellee, and to the other parties as appellants or, with reference to the Castle Hotel Company, as employer.

We believe the first proposition to determine on this

appeal is the contention of the appellee that the Workmen's Compensation Court acquires jurisdiction only by the filing of a valid claim, and that in the instant case no valid claim was filed in the Workmen's Compensation Court for the reason that the appellee did not file a claim therein and claimed no rights under the Workmen's Compensation Act.

In connection with this contention, the appellee filed a motion in this court to dismiss the appeal. Ruling thereon was reserved until this case was heard on its merits. The motion alleged that the appellee had filed a common law action in the district court for Douglas County against the appellants wherein she prayed for damages for personal injuries sustained by her on account of the negligence of the appellants, Boss Hotels Company and the Castle Hotel Company; that the appellants filed an answer to the common law action; that the appellee never had claimed to be under the Nebraska Workmen's Compensation Act; that the appellants had made certain voluntary payments to her by way of drafts which she had not cashed, and also voluntarily paid certain medical bills, which payment could not be prevented by the appellee; that the present action constituted an attempt by appellants to have the validity of a common law defense prejudged by a court of equity; and that if the appellee was under the Workmen's Compensation Act at the time of her injury, the same was a defense to the common law action pending between the parties. Appellee moved to have the appeal dismissed.

The transcript discloses that on September 21, 1954, the Fidelity and Casualty Company of New York, the insurance carrier for the Boss Hotels Company and Castle Hotel Company, the latter being brought into the action as plaintiffs later, filed its petition in the Nebraska Workmen's Compensation Court making Ruth Kennard, an employee of the Castle Hotel the appellee here, defendant. This petition alleged payments of

compensation benefits to the defendant for temporary total disability for 7 weeks, from March 10, 1954, to April 27, 1954, at the rate of $26 per week, or the total sum of $182; that in addition, hospital, medical, and drug bills on behalf of the defendant were paid as follows: To Doctors Hospital, Omaha, $195.05; to Drs. Simonds, Hardy, and McArdle, Omaha, for X-rays, $40; to John O'Brien, druggist, $6.15, a total of $241.20. The petition further alleged that after the payment of the aforesaid compensation benefits and hospital, medical, and drug bills, the defendant, through her attorney asserted a common law action against her employer, the Castle Hotel Company; that no suit had been instituted by any of the parties thereto prior to the filing of this petition; that following the assertion of a common law liability against the employer, the insurance carrier discontinued the payments of weekly compensation for temporary total disability as of April 27, 1954; and that the attending physician stated that the temporary total disability continued until May 17, 1954, when defendant was or should have been able to resume work. The petition prayed that a hearing be had before the Workmen's Compensation Court and that an adjudication be made by said court that this case was one falling within the province and jurisdiction of the Nebraska Workmen's Compensation Court; that the rights and liabilities of the parties be determined; and that plaintiff be awarded such relief as to which it may be entitled under the provisions of the Workmen's Compensation Act.

To the above petition the defendant filed an answer. In the answer she denied that the accident came under the provisions of the Nebraska Workmen's Compensation Act, and alleged affirmatively that because of the negligence of the Boss Hotels and the Castle Hotel, she suffered her injury, and that she had her action at common law against the said hotels.

The case was heard before a judge of the Nebraska

Workmen's Compensation Court on November 22, 1954, and award was entered on January 20, 1955, wherein the court made findings as follows: That the defendant was receiving an average weekly wage in excess of $39 per week which was sufficient to entitle her to the maximum compensation payments of $26 per week; that the defendant had been paid 7 weeks compensation for temporary total disability but was entitled to an additional 3 weeks and 5 days compensation at the rate of $26 a week for temporary total disability; and that an additional amount was due her in the sum of $96.57 and plaintiffs were liable for the bill due Dr. Max Block in the sum of $158. The court also found that the case fell within the purview of the Nebraska Workmen's Compensation Act. Judgment was entered in accordance with the findings.

The defendant appealed directly to the district court, filing her petition on appeal on January 31, 1955. In her petition she prayed the award made in the Nebraska Workmen's Compensation Court be vacated and set aside; that the court find and determine that the accident therein concerned did not fall under the provisions of the Nebraska Workmen's Compensation Act; that if, however, the court should find that said accident did come within the act, the plaintiffs should pay any and all medical and hospital bills and temporary disability compensation, together with permanent partial disability which defendant sustained as a result of said accident.

The appellants filed an answer to the appellee's amended petition in the district court on August 4, 1955. It is apparent that the appellants commenced an action in the Nebraska Workmen's Compensation Court prior to the time that the appellee commenced her common law action in the district court. We find nothing in the record to the contrary.

Section 48-173, R. R. S. 1943, provides in part: "In all cases involving a dispute with reference to work-

men's compensation, either party at interest, without cost, either in person or by attorney, may file with the court a verified petition setting forth the names and places of residence of the parties and the facts relating to the employment at the time of the injury for which compensation is claimed, the injury in its extent and character, the amount of wages being received at the time of the injury, the knowledge of or notice to the employer of the occurrence of such injury and such other facts as may be considered necessary for the information of the court, and also stating the matter or matters in dispute and the contention of the petitioner with reference thereto."

In Krajeski v. Beem, 157 Neb. 586, 60 N. W. 2d 651, this court said: "With reference to the time for filing a petition in the Workmen's Compensation Court in case of a dispute, which section 48-173, R. R. S. 1943, provides may be done by either party, * * *."

Section 48-161, R. R. S. 1943, provides: "All disputed claims for workmen's compensation shall be submitted to the Nebraska Workmen's Compensation Court for a finding, award, order or judgment."

In Miller v. Schlereth, 151 Neb. 33, 36 N. W. 2d 497, this court said, with reference to the Workmen's Compensation Act: "The act creates new remedies and new liabilities. The manner in which it operates is to be found under the legislation itself. See, Perry v. Huffman Automobile Co., 104 Neb. 211, 175 N. W. 1021, 179 N. W. 501; Ashton v. Blue River Power Co., 117 Neb. 661, 222 N. W. 42."

We conclude that appellants had the legal right to commence an action in the Nebraska Workmen's Compensation Court, that the contention of the appellee cannot be sustained, and her motion to dismiss the appeal is overruled.

On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record. See, Myszkowski v. Wilson & Co.,

Inc., 155 Neb. 714, 53 N. W. 2d 203; Jones v. Yankee Hill Brick Mfg. Co., 161 Neb. 404, 73 N. W. 2d 394.

The record discloses that the Castle Hotel is situated on the west side of Sixteenth Street in Omaha. The main entrance is to the east and is about in the center of the building. The entrance is recessed in from the west edge of the sidewalk running along the east front of the hotel building approximately 6 feet. The entrance has double doors which are located 5 feet 7 inches west of the east edge of the terrazzo floor of the entrance. The terrazzo floor of the entrance is 13 feet 5½ inches north and south in length at the east building line of the structure. The words "Hotel Castle" are formed in the terrazzo floor of the entrance. The double doors leading into the lobby of the hotel are of glass and wood and have three chrome handle bars on each door. The recess to the building is contiguous to the Castle Hotel and is covered with terrazzo flooring, which meets the west line of the sidewalk approximately 6 feet from the doors, and the inset of the area is then 6 feet approximately west of the west line of the sidewalk, and inside, or west of the exterior walls of the building on each side of the entrance.

A houseman employed by the Castle Hotel and doing work which included janitor work, testified that on March 3, 1954, he was mopping the lobby of the hotel. He saw Kennard approach from the north and turn toward the front doors of the hotel. He had finished mopping the terrazzo floor and dried it off as best he could. He stood on the inside of the doorway to notify people that the floor was slick. Kennard walked up to the right-hand door and reached for it, to enter the hotel. This was about 8:30 or 8:45 a. m. She slipped and fell. He was in a position to open the door. She was lying entirely in the area of the terrazzo floor. He believed she was lying on her right side. He and a guest of the hotel went to her assistance, opened the door, and took her inside. She had a sack in which there was a

pair of blue shoes. He further testified that there is a powder room, or ladies rest room, to the south of the lobby about 10 or 12 feet from the front door. To go to the coffee shop from the powder room, you go north, then along the cigar counter in the lobby to the coffee shop. After you open the door to the coffee shop, you step down into the coffee shop.

On cross-examination he testified that the terrazzo floor slants down to the sidewalk; that there is a large mat which covers half of the areaway which was not in use because it takes two men to handle it and he was alone; and that the Westward-Ho Bar lies between the coffee shop and the hotel proper. From the inside of the hotel you go into the bar to get from the coffee shop to the lobby. When Kennard fell, her head was far enough from the door so that it could be opened without touching her. Her feet had slipped to the east a little past the letters "L" and "E" in the word "Castle" on the terrazzo floor. When she slipped, she was about an arm's length from the door.

Ruth Kennard testified that she was 59 years old and worked at the hotel coffee shop as a hostess on March 1, 2, and 3, 1954. She was called to work the morning of March 3rd by someone in the coffee shop. She came from her home, got off the bus at Sixteenth Street, and walked south toward the hotel. She frequently used the powder room in the lobby. That morning she had a pair of blue shoes which she had purchased, with the intention of trying them out. She had on the shoes she normally used to work in. In the Workmen's Compensation Court she testified that she had a pair of blue shoes in a sack which were her work shoes, and she was going to the rest room to change into them. She was on her way across the terrazzo area to open the door into the hotel. She was going to the powder room to put on the blue shoes. She had used this room before when going to work. She believed she fell in the terrazzo entrance where the lettering "Hotel Castle" ap-

pears. When she reached for the door she slipped. After she got inside the hotel and went to the powder room, Mrs. Papineau, the wife of George Papineau who manages the hotel, came in. She told Mrs. Papineau she thought she would be all right, not to worry, and that her arm was hurt. Mrs. Papineau called Dr. Block. Kennard was taken to Dr. Simonds' office in the Medical Arts Building to be X-rayed. Later she went home, and then later to the hospital where Dr. Block set her arm. She remained in the hospital for 2 weeks. A Mr. Morgan from the Fidelity and Casualty Company interviewed her in the hospital and took her statement as to how the accident happened. After that she received seven checks, each for $26, as workmen's compensation. She paid no hospital bill, doctor bills, or bills for the X-ray, neither did she receive any statement from the hospital. She went to Dr. Block's office, but did not know how often.

On cross-examination she testified that she worked part time in the Castle Hotel coffee shop; that her work station was in the coffee shop; that is where she reported for work; that she had no duties in the hotel lobby nor the Westward-Ho Bar; that she did not report in the coffee shop for work on the morning of March 3, 1954; and that there is a supervisor in the coffee shop who acts as head hostess who would be in the coffee shop when Kennard reported for work. She further testified that when she was released from the hospital she went to her own physician who treated her, at her own expense, until she was able to go to work on November 28 or 29, 1954. She was unable to work, due to her inability to use her injured arm, for a long period of time after the accident, which prevented her from doing the type of work she ordinarily did. When she went back to work she went to the Regis Hotel coffee shop. She was required to use her arms and hands as a hostess, especially during busy times when she cleared the tables of dishes or carried chairs as a part of her work. When

she did go back to work, as a result of the fall she had pains in her sacroiliac and legs during busy hours, which caused her to have headaches and become upset. She drew no wages from March 3, 1954, until November 29, 1954. During this period of time she stayed at home.

Mrs. Papineau testified that she met Kennard in the hotel lobby at different times when she would come through the door with her hat and coat on; that she would come in and go to the coffee shop; and that the powder room is a facility for use of the hostesses and certain other employees. She defined the duties of a hostess, to receive and greet guests, to wait around with the menus and to take guests from one place to another, and when business was rushing, to clear the tables of dishes and cutlery and place the same in a box which was taken to the kitchen by a bus boy; that the hostesses ordinarily work in conjunction with the cash register with reference to charge accounts which are required to be taken to the office in the lobby where the hostesses would receive the money and go back and put it in the coffee shop cash register. She further testified that coming in the front door and going to the powder room, you turn west. On leaving the powder room, a short distance north you arrive at the cigar stand, then step down to the coffee shop. She testified that she had seen Kennard do that at different times prior to the accident. Kennard was paid 75 cents an hour, and worked by the hour. There is evidence that Kennard also had a meal allowance of $1.40 per day. This witness further testified that the terrazzo entrance is within the property lines of the Castle Hotel; and that the hotel property is leased from the Gifford estate.

On cross-examination she testified that a time book is kept in the coffee shop where the hours of work are entered; that a hostess reporting for work on March 3, 1954, would not necessarily report in the coffee shop; and that ordinarily she would not report there if she was going to come in and wanted to make her first en-

trance into the other room. She would come in, take care of her duty or duties or whatever she wanted to do.

The auditor for the hotel prior to and on March 3, 1954, and who thereafter had full charge of the payroll records, testified that Kennard's name appeared on the payroll for March 1, March 2, and March 3, with 9 hours' pay for March 1, 9 hours' pay for March 2, and 1 hour's pay for March 3, constituting 19 hours at 75 cents an hour, in an amount of $11.74; that a check was issued for this amount on May 10, 1954; and that the hostesses reported to Bonnie Erickson, the supervisor in charge of the coffiee shop at that time. There was a notation in pencil on the time sheet for March 3 showing that Kennard was hurt.

None of the checks received by Kennard as workmen's compensation were cashed by her.

On resuming the stand in her own behalf, Kennard testified that she reported for work in the coffee shop and was not paid until she reported there; that she had a conversation with Dr. Block in which she told him, after he dismissed her, her back was still bothering her down through her side, leg, and ankle; that he told her to get her own doctor; and that it was difficult to tell in just what manner she did fall in the Castle Hotel, but stated that she must have fallen on her right arm.

Dr. Block testified that he saw Kennard professionally on March 3, 1954, at the Castle Hotel. He found her up and around in the coffee shop, and he examined her. She was taken to the offices of Drs. Simonds, Hardy, and McArdle in the Medical Arts Building for the purpose of having X-rays taken of her right shoulder and right arm, including the elbow and the upper forearm. There was no evidence of fracture or dislocation, or any pathology of the right shoulder. On the right elbow there was a longitudinal fracture line through the head of the radius involving the medial third of the head and the fragments were in excellent position. The rest of the elbow was normal in appearance. She was taken to

Doctors Hospital where a cast was applied to her right arm and up to and just below the shoulder, including the upper and lower arm and extending to the wrist. She was hospitalized. He further testified that he took care of her daily at the hospital. She complained of pain in her shoulder, wrist, and hand. On April 12, 1954, an X-ray was taken at his office which showed the fragments of the radius well united and in good position. Later she complained of her shoulder and he told her to go back to Dr. Simonds for a check of her shoulder which was X-rayed by Dr. Simonds on April 6, 1954. There was no evidence of old or recent fractures or other pathology involving the shoulder joint. The X-ray films also included the upper three-fourths of the shaft of the humerus, and there was no evidence of pathology in that area. She entered the hospital on March 3rd and was dismissed on March 17th, 1954, when she returned to her home. He treated her at his office until May 17, 1954. He had no recollection of her complaining about her back and did not treat her for her back, but only for her shoulder and arm. The fracture was about half an inch long at the head of the radius bone, which is not considered a grave fracture. This is the only fracture she had in her arm. The cast was applied on March 3, and removed on April 12. He gave as his opinion that there was no percent of partial permanent disability, and that she had fully recovered from the injury. She was complaining of some soreness and stiffness in the joint. He advised her to use heat and massage. He gave as his opinion that she should have returned to work sooner than November 29, 1954; and that her duties were light enough for her to resume work. The fracture healed satisfactorily. His bill was $158.

Dr. Madsen did not testify in the Workmen's Compensation Court but did testify in the district court that he saw Kennard for the first time after the accident in his office on April 5, 1954. The following history

was related to him: She had fallen and broken her right arm and elbow and was in the hospital for 2 weeks; that she had bruised her left foot; and that she was nervous and shaky. There was limitation of motion of the left knee and left ankle. She claimed to have pain in both shoulders. He found no cause for pain in the shoulders, nor did he believe that pain in her abdomen had anything to do with the accident; and could find no cause for pain in her hip in relation to the accident. He detailed the treatments with reference to her condition on the various times that he saw her after 1947 up to and including the time he saw her with reference to the accident. It is apparent from the record that the conditions for which he had previously treated Kennard had no relation to the accident in question. He gave as his opinion that she was not able to return to work prior to the last part of November. Upon his examination with reference to this accident he found she had muscle pain when she did any moderate or light work. She had tenderness of the ligaments of the left knee, or the left ankle, and tenderness over the sacro-iliac. He did not examine the X-rays of her shoulder, and had no knowledge with reference to the fracture found by Dr. Block. He gave as his opinion that she had a 10 percent partial permanent disability in performing her work as a hostess which he considered to be light or moderate work. He was unable to tell how he arrived at the percentage, except to say that it was in connection with the amount of motion that she could go through and had no reference to the fracture, that the 10 percent related more to the damage to the soft tissue, but that nobody could tell about soft tissue unless it was dissected. He further testified that 10 percent is not much, it is mild, and that it would not keep her from being a hostess at any coffee shop; that the condition he treated her for was as a result of the accident; and that in addition she was nervous and anxious about her ability to earn a living which was a contrib-

uting factor to her inability to return to work until the latter part of November 1954.

This brings us to the question as to whether or not the injuries received by Kennard arose out of and in the course of her employment.

Section 48-151, R. R. S. 1943, subdivision (6) thereunder, provides as follows: "(6) Without otherwise affecting either the meaning or the interpretation of the abridged clause, 'personal injuries arising out of and in the course of employment,' it is hereby declared: Not to cover workmen except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen, and not to cover workmen who, on their own initiative, leave their line of duty or hours of employment for purposes of their own."

In McDonald v. Richardson County, 135 Neb. 150, 280 N. W. 456, Byrd McDonald was a clerical assistant to the county engineer. All of her duties were performed in the courthouse. After finishing her work on a snowy and stormy evening, she left the courthouse to go home. While walking down an automobile driveway leading from the courthouse to the street, which was the customary way for pedestrians to leave the grounds, she fell and sustained a double fracture of her left leg. This court said: "In the instant case the employee was not engaged in the business of her employer. She was leaving the place of employment, but she was still upon the premises of the employer. She was on the courthouse grounds in the course of going home. One (sic) the way home she intended to engage in her own personal business. She did not live in the courthouse, and it was necessary for her to go home. She was leaving the premises of her employer by a route commonly used by the employees of the county. She fell and suffered an injury before she had reached the street.

"In Kasari v. Industrial Commission, 125 Ohio St. 410, 181 N. E. 809, it was held: 'Traversing the zone between the entrance of the employer's premises and the plant where an employee is employed is one of the hazards of the employment.' A well-recognized annotator, in considering this case, states: 'By the weight of authority injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the workmen's compensation acts, and this rule is supported by the later cases.' 82 A. L. R. 1044. Cases are cited from many jurisdictions to support this statement. * * * An employee leaving the premises of her employer in the usual and customary way after her work is ended is within the course of her employment within the meaning of the workmen's compensation law. Walking to and from the street and a building where one is employed is a necessary incident of the employment, and an injury sustained in so doing is compensable."

In Schank v. Glenn L. Martin-Nebraska Co., 147 Neb. 385, 23 N. W. 2d 557, the court said: "It is a general rule that if an employee is injured while going to or from his work to his home, the injury does not arise out of nor in the course of the employment. Siedlik v. Swift & Co., 122 Neb. 99, 239 N. W. 466; Richtarik v. Bors, 142 Neb. 226, 5 N. W. 2d 199; Lincoln Traction Co. v. Reason, 143 Neb. 512, 10 N. W. 2d 344. In McDonald v. Richardson County, 135 Neb. 150, 280 N. W. 456, this court recognized an exception to this general rule. The exception as stated in that case is to the effect that an employee, leaving the premises of the employer in the usual and customary way after the work period has ended, is within the course of the employment within the meaning of the Workmen's Compensation Act. * * *

"The reason upon which the exception is grounded is that the hazards of entering or leaving the place of employment while on the property of the employer are

hazards of the employment which must be assumed by the employer. The employer is obliged to provide safe ingress and egress to and from the place of employment for employees entering or leaving its property in the performance of the work of the employment. * * * But this is on the theory that the employer has control of the premises and the employee and that the risks of entering or leaving the place of work are incidental to the employment."

The evidence in the instant case discloses that the employee, Kennard, was endeavoring to pass through the entrance door leading to the lobby to go to the powder room to change her shoes and prepare for her work. She had used this room on previous occasions. It was a facility furnished by the hotel for the use of its hostesses working in the coffee shop and for use in their employment. The employee Kennard was "in, on or about the premises" of the Castle Hotel and within the area of the hotel premises when she fell. She was within the area of the hotel premises where, among other activities of the hotel, her employer operated a restaurant business, a part of the hotel operation, and where her duties were to be performed.

We are committed to the view that a disability arising from injuries sustained on the employer's premises must be incidental to the employment to be within the requirement of the compensation law that it "arise out of" and "in the course of" the employment. The use of the employer's premises in the usual and ordinary manner in entering or leaving the place of employment is incidental to the employment.

We believe the exception to the general rule applies under the facts and circumstances of the instant case, and comes within the provisions of section 48-151, R. R. S. 1943.

The appellee, in her brief, makes a request for attorney's fees to be taxed as costs to cover work done in two trials and in this appeal.

The right to tax attorney's fees in compensation cases is purely statutory. Updike Grain Co. v. Swanson, 104 Neb. 661, 178 N. W. 618; Rexroat v. State, 143 Neb. 333, 9 N. W. 2d 305.

Section 48-125, R. R. S. 1943, relates to the allowance of attorney's fees in compensation cases. The pertinent part of the section applicable here is as follows: "In the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court."

In Sporcic v. Swift & Co., on rehearing, 149 Neb. 489, 31 N. W. 2d 404, we said: "We are of the opinion that the words 'in like manner' limit the power granted and refer to the provision in the same sentence with reference to the granting of fees in the district court; and that this court shall allow fees in like manner as shall the district court."

In the instant case the employee resisted the employer's action in the compensation court on the basis that she did not receive an injury arising out of and in the course of her employment within the contemplation of the Workmen's Compensation Act, and that her action was one based on common law for damages as a result of the negligence of her employer. The Workmen's Compensation Court made an award in her favor. From this award she appealed to the district court, and in that court successfully resisted the judgment of the Workmen's Compensation Court and succeeded in having the action vacated and dismissed. From this judgment an appeal was taken by the employer to this court, the result here being that the employee came within the provisions of the Workmen's Compensation Act and was entitled to an award. The statute limits the right to

an attorney's fee to a specific situation. The appellee has not brought herself within the statute, and her request for attorney's fees to be allowed and taxed as costs is denied.

From the record, and in the light of the authorities heretofore cited, we conclude that the judgment of the district court should be and is hereby reversed. The facts sustain the judgment of the Workmen's Compensation Court. The district court is directed to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.