881 P.2d 1246

**Elsie M. TATE, Claimant–Appellant,**

v.

**GTE HAWAIIAN TELEPHONE CO. and Argonaut Insurance Co., Employer/Insurance Carrier–Appellees.**

No. 17529.

Supreme Court of Hawai'i.

Oct. 10, 1994.

Herbert R. Takahashi, Danny J. Vasconcellos and Rebecca L. Covert of Takahashi, Masui and Vasconcellos, on the briefs, Honolulu, for claimant-appellant Elsie M. Tate.

Clyde Umebayashi and Muriel M. Taira of Kessner, Duca, Umebayashi, Bain & Matsunaga, on the briefs, Honolulu, for employer/ins. carrier-appellees GTE Hawaiian Tele. Co. and Argonaut Ins. Co.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

This case presents us with the opportunity to clarify the nature and scope of coverage under the Hawai'i workers' compensation law, Hawai'i Revised Statutes (HRS) ch. 386 (1985 & Supp.1992). The claimant-appellant Elsie Tate appeals from the decision of the Labor and Industrial Relations Appeals Board (Board) denying her claim for workers' compensation.[1] On appeal, Tate contends that the Board erred in: (1) refusing to consider whether the activities giving rise to

Tate's injury were a normal incident of her employment; (2) applying a restrictive "work connection" test that ignored evidence of custom and practice, acquiescence by the employer, and benefit to the employer; and (3) failing properly to consider or apply the statutory presumption of compensability to Tate's injury.

We disagree with all three of Tate's points of error. Accordingly, because we hold that Tate's injury falls outside the scope of workers' compensation coverage under applicable Hawai'i law, we affirm the Board's decision denying Tate's claim.

## I. BACKGROUND

For over twenty years, Tate had been continuously employed by GTE Hawaiian Telephone Co. (Haw Tel) as a switchboard operator. Sometime in 1989, Tate notified her supervisor, Jim Danley, that she planned to retire upon reaching her sixty-fifth birthday, which fell on July 13, 1990. By agreement, Tate and Danley arranged for Tate to take a period of pre-retirement vacation, which would allow her to expend accrued vacation time. The period was to commence on July 16, 1990, and end on August 28, 1990. On August 29, 1990, following her last day of vacation, Tate was to retire.

Tate's last day of actual work was Friday, July 13, 1990. On that day, Tate's co-workers gave a retirement party for her, organized exclusively by them and held in the employees' lounge situated on Haw Tel's premises. Haw Tel typically allowed such retirement parties to be given on its premises during work hours, although the parties were uniformly financed by co-workers without any direct support from Haw Tel.[2] At her party, Tate received gifts from her co-workers, her union, and Haw Tel.

On Monday, July 16, 1990, Tate began her pre-retirement vacation period. On August 3, 1990, approximately half-way through her six week vacation, Tate visited Haw Tel's premises in order to take a cake to her co-

---

1. Appeals from decisions of the Board are made directly to this court, as provided in HRS § 386–88 (1985).

2. Haw Tel annually sponsors a separate retirement banquet, which honors all of the previous year's retirees.

workers as a gesture of appreciation for the retirement party. Haw Tel had not requested that Tate return to the premises that day for any reason.

While such gestures of appreciation were customary on the part of Haw Tel's retired employees, the decision whether to conform to the custom was solely within the discretion of the retiring employee. Gestures of appreciation were neither required nor expected by Haw Tel, and Haw Tel had no policy either encouraging or prohibiting such gestures. When asked whether anyone requested that she bring a cake to her co-workers, Tate testified, "No. I wanted to do it on my own because I appreciate them."

After obtaining permission from the manager of directory assistance, Coonrod, to share the cake with her former co-workers, Tate delivered the cake. Afterward, Tate spoke with Dana Morey, a co-worker and union shop steward. Morey, who holds no management capacity at Haw Tel, suggested that, while in the area, Tate should see Kathryn Rowe, the benefits administrator, regarding her pension.

Although she had no previously arranged appointment to see Rowe, Tate proceeded to Rowe's office, which was located one block from the Haw Tel building. Pursuant to standard operating procedure, once an employee notified Haw Tel of his or her intent to retire, the office of the benefits administrator would prepare retirement benefit calculations, which would be mailed to the retiree; only then would an appointment for retirement counseling customarily be scheduled. Because Tate had not abided by this procedure, the calculations for her benefits had not been completed. Thus, Rowe advised Tate to schedule an appointment after receiving her retirement papers.

Following her meeting with Rowe, Tate returned to the Haw Tel building to retrieve

a piece of cake she had left in the refrigerator of the employees' lounge, intending to take it home with her. Tate rode the elevator to the fifth floor, where the lounge and refrigerator were located. While exiting the elevator, she slipped, fell, and sustained a fracture to her left knee.

On February 11, 1991, Tate filed a timely claim for workers' compensation benefits for her fractured knee. On December 4, 1991, the Director of the Disability Compensation Division of the Department of Labor and Industrial Relations (Director) denied Tate's claim, finding that the injury was not work-related. On December 5, 1991, Tate appealed the Director's decision to the Board.

On June 2, 1992, the Board conducted a hearing on the appeal. On October 13, 1993, the Board rendered a decision and order affirming the Director's decision. The Board concluded that Tate's injury did not arise out of and in the course of employment, finding that although Tate's injury had occurred on Haw Tel's premises, that fact alone did not establish compensability. Relying on its finding that Tate's reasons for being present on Haw Tel's premises at the time of the accident were strictly personal, the Board denied her claim.

Tate filed a timely notice of appeal on October 20, 1993.

## II. *STANDARD OF REVIEW*

■ Being governed by the Hawai'i Administrative Procedure Act, HRS ch. 91 (1985 & Supp.1992), appeals taken from findings set forth in decisions of the Board are reviewed under the "clearly erroneous" standard. *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 651, 636 P.2d 721, 727 (1981). Thus, this court considers whether such a finding is "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.]"[3] *Id.* The clearly

3. HRS § 91–14(g) (1985) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the

administrative *findings, conclusions,* decisions, or orders are:
(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other *error of law;* or

erroneous standard requires this court to sustain the Board's findings unless the court is "left with a firm and definite conviction that a mistake has been made." *Id.* at 652, 636 P.2d at 727 (internal quotation marks and citation omitted); *see also State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994).

A conclusion of law (COL) "is not binding on an appellate court and is freely reviewable for its correctness." *Furutani,* 76 Hawai'i at 180, 873 P.2d at 59 (internal quotation marks and citation omitted). Thus, this court reviews COL *de novo,* under the right/wrong standard. *Id.* (citation omitted).

### III. *DISCUSSION*

**A.** *The Board Did Not Err In Concluding That Tate's Injury Did Not Arise Out Of And In The Course Of Employment.*

■ For an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.[4] This court has employed two different approaches in determining whether injuries meet this criterion.

> (5) *Clearly erroneous* in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
> (Emphasis added.)

**4.** *See* 1 Modern Workers Compensation § 110:1 n. 3 (M. Canavan ed. 1993) for a comprehensive list of state codes referring to this type of formula. The Hawai'i statute provides, in relevant part, as follows:

> **Injuries covered.** If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as hereinafter provided.

HRS § 386-3 (1985).

The essential prerequisite for coverage under the Hawai'i workers' compensation law is the

The traditional view, under which early workers' compensation cases were decided, required that a claimant show that her injury arose both "out of" and "in the course of" employment. *See Chung,* 63 Haw. at 647–48, 636 P.2d at 725 (citations omitted) (discussing early approach). The traditional test thus consisted of two steps, in which the elements of "arising out of" and "in the course of" were separately established. *Id.* at 648, 636 P.2d at 725 (citation omitted).

■ More recently, the court has adopted a "unitary" test that considers whether there is a sufficient work connection to bring the accident within the scope of the statute. First articulated in *Royal State National Insurance Co. v. Labor and Industrial Relations Appeal Board,* 53 Haw. 32, 487 P.2d 278 (1971), the work connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment. *Chung,* 63 Haw. at 648, 636 P.2d at 725 (citations omitted). The unitary work connection test was formally adopted as the correct means of interpreting and applying HRS § 386–3 in *Chung. Id.* at 649, 636 P.2d at 726.[5]

1. *Tate's injury was not causally connected to an incident or condition of employment.*

"An injury is said to arise in the course of the employment when it takes place within

existence of an employer-employee relationship. *Chung,* 63 Haw. at 644, 636 P.2d at 723 (citations omitted). An "employment" relationship arises whenever an individual performs a service "for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into." HRS § 386–1 (Supp.1992). In this connection, we note that, at the time of her injury, Tate was officially an employee of Haw Tel, notwithstanding the fact that she was on pre-retirement vacation.

**5.** The court employed the work-connection approach in several cases decided between *Royal State National Ins. Co.* and *Chung. See, e.g., Akamine v. Hawaiian Packing and Crating Co.,* 53 Haw. 406, 495 P.2d 1164 (1972); *Pacheco v. Orchids of Hawaii,* 54 Haw. 66, 502 P.2d 1399 (1972); *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976); and *Lawhead v. United Airlines,* 59 Haw. 551, 584 P.2d 119 (1978).

the period of employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto." 1 A. Larson, The Law of Workmen's Compensation § 14.00 (1993) [hereinafter Larson].

Activities, such as seeking personal comfort, "going and coming," and engaging in recreation have no inherent status as part of the employment. 1A Larson § 21.81. As distinguished from actual performance of the direct duties of the job, these activities must be established as incidents of the work itself. *Id.* In explaining the method by which an activity shall be characterized as "incidental" to work, Larson writes: "[T]he word 'incident' contains an element of the usual and reasonable, both as to the needs to be satisfied and as to the means used to satisfy them." *Id.*

Tate sustained her injury when she returned to the Haw Tel building to retrieve a piece of cake. She had previously delivered the cake as a gesture of appreciation to her co-workers for the retirement party they had given her.[6] We therefore cannot accept Tate's contention that the injury arose in the course of employment because it occurred in the context of processing retirement papers. Tate's accident occurred *after* her meeting with Haw Tel's benefits administrator had ended and Tate had returned to the Haw Tel building for a reason completely unrelated to her retirement plan.

Similarly, Tate's injury did not result from her act of delivering the "thank you" gift to her co-workers. She had completed that errand, left the building, and then returned for a different purpose at the time she sustained her injury. Consequently, we need not address whether the act of showing appreciation for retirement parties through "reciprocating gestures" can be characterized as an incident of employment.[7]

Tate slipped and fell after returning to the Haw Tel building for a piece of cake that she intended to take home, *i.e.,* in the course of a quintessentially "personal errand." Personal errands are not, by their nature, related to employment. *See, e.g., Heverly v. Workmen's Compensation Appeal Bd. (Ship N Shore),* 134 Pa.Commw. 110, 114, 578 A.2d 575, 577 (1990) (citing string of cases establishing proposition that injuries sustained while employee is engaged in "personal mission" are not compensable); *Silver Engineering Works, Inc. v. Simmons,* 180 Colo. 309, 312, 505 P.2d 966, 968 (1973) (employee who departs on personal errand loses right to workers' compensation benefits from accident occurring during such departure). Retrieving a piece of cake from an employees' lounge, while on vacation, does not amount to a "usual and reasonable" act incidental to employment as a switchboard operator. *See* 1 Larson, *supra,* § 14.00.

Tate contends that her injury is compensable because it arose in the context of a work-connected recreational and social activity. Indeed, an injury is deemed to be causally connected to an incident or condition of employment, and therefore compensable, if it occurs during recreational and social activities regularly engaged in on an employer's premises, with the employer's approval or encouragement. *See, e.g., McNamara v. Town of Hamden,* 176 Conn. 547, 398 A.2d 1161 (1978) (where (1) employer sanctioned ping pong games by regulating permitted playing times, allowing equipment on premises, and setting aside afternoon work hours for activity and (2) games occurred regularly on employee's premises, games were incident of employment for purposes of injured employee's workers' compensation claim); *Mack Trucks, Inc. v. Miller,* 23 Md.App. 271, 326 A.2d 186 (1974), *aff'd,* 275 Md. 192, 338 A.2d 71 (1975) (injury during touch football game during coffee break compensable as incident

---

6. In its decision and order, the Board did not distinguish Tate's act of retrieving a piece of her cake from the original act of delivering it as a gesture of appreciation. Nonetheless, this distinction is important; it clarifies and supports the Board's decision to deny the claim.

7. Tate therefore raises what is, in fact, a non-issue, by arguing that reciprocating gestures should be characterized as incidents of employment. As noted above, Tate's injury did not occur in the course of making such a gesture. Thus, Tate's lengthy argument purporting to establish such "reciprocating gestures" as custom and practice beneficial to Haw Tel is irrelevant.

of employment because employer knew of and acquiesced in activity); *Henry v. Lit Brothers, Division of City Stores, Inc.,* 193 Pa.Super. 543, 165 A.2d 406 (1960) (employee's lunch hour touch football injury compensable where employer knew of and made no objection to employees' recreational use of company grounds).

■ In our view, the authority cited above is inapposite to the present matter because, on the record before us, Tate's return to the Haw Tel building for a piece of cake was nothing more than a personal errand. *Cf. Heverly, supra,* (injury sustained when employee returned to employer's premises after completion of employment duties to retrieve eyeglasses not compensable); *Williams v. City of Columbia,* 218 S.C. 287, 62 S.E.2d 469 (1950) (injuries sustained by vacationing employee, who entered employer's premises, climbed tree to gather nuts for personal consumption, and fell from tree, did not arise out of and in course of employment). Haw Tel neither sponsored nor encouraged Tate's initial gesture of appreciation or her subsequent return to the workplace to retrieve a piece of cake for her personal consumption; indeed, the record is devoid of any evidence that any representative of Haw Tel's management was even aware of the latter.

Tate further claims that the Board's decision was based on a "single factor approach," which this court has held to be inapplicable to an analysis of work connection. *See, e.g., Ono v. Hawaiian Tel. Co.,* 68 Haw. 479, 718 P.2d 1085 (1986) (fact that employer contributes to maintenance of common areas in shopping center only one factor to be considered in determining whether such areas are employer's premises for purposes of workers' compensation). Contrary to Tate's assertion, however, the Board did not apply a single factor approach in determining the compensability of her claim. The Board considered a multiplicity of factors including the situs of the accident, Tate's employment status at the time of the accident, the purpose of Tate's presence on Haw Tel's premises at the time of the accident, the benefit to Haw Tel of Tate's visit to the workplace, and the nature of the retirement-related activities in which Tate was engaged on the day in question.

Thus, in its decision, the Board expressly concluded that *"having reviewed the various factors presented by Claimant,* we find that Claimant's reason for going to Employer's premises on August 3, 1990, is the determining factor in this case." (Emphasis added).

Based on the foregoing analysis, we hold that Tate's act of returning to her employer's premises for the sole purpose of retrieving a piece of cake for her personal enjoyment bore no relation to an incident or condition of her employment. Accordingly, we hold that there was no causal connection between her injury and any incident or condition of that employment.

2. *The Pacheco decision is inapposite to the present case.*

In *Pacheco v. Orchids of Hawai'i,* 54 Haw. 66, 502 P.2d 1399 (1972), this court expanded the scope of the workers' compensation law to an injury occurring outside an employer's premises that was sustained by an employee who was pursuing a necessary personal matter (in that case, cashing a paycheck) during an authorized coffee break. *Id.* at 69, 502 P.2d at 1401. The *Pacheco* result emerged from a two-step approach in which this court first characterized authorized work breaks as incidents of employment and then extended workers' compensation to "reasonable and necessary activity incidental to such break[s]." *Id.; cf. New England Tel. Co. v. Ames,* 124 N.H. 661, 664, 474 A.2d 571, 573 (1984) (employee's activity arises out of and in course of employment if it furthers employer's interest, even if it is of mutual benefit to the employee and employer).

*Pacheco* is distinguishable from the present appeal for two reasons. First, Tate's decision to give her co-workers a gift as a gesture of appreciation for her farewell party was not a necessary incident of employment. Unlike personal errands during authorized rest or meal breaks (as in *Pacheco* ), or even work-related recreational, social, or athletic activity, such reciprocating gestures are not inherently related to employment. They are, at best, incidents of the incidental practice of holding informal parties—initiated solely by co-workers—for retiring employees.

Second, Tate's injury occurred while she was engaged in conduct that was at least three steps removed from her actual duties of employment: (1) returning to the workplace to retrieve a piece of the cake; (2) that she had previously delivered to her co-workers as a gesture of appreciation; (3) for a retirement party that her co-workers had instituted for her. Thus, as we have indicated, Tate's activity at the moment of her injury could most accurately be characterized as an incident of an activity that was itself an incident of employment. *Cf. Pacheco*, 54 Haw. at 78–79, 502 P.2d at 1406 (Levinson, J., dissenting). Put differently, Tate's injury is not causally connected to any incident or condition of her employment, *see Chung*, 63 Haw. at 648, 636 P.2d at 725, and therefore is not subsumed within the ambit of HRS § 386–3.

For the foregoing reasons, Tate's reliance on *Pacheco* is misplaced. Even if employee-organized parties for retiring employees were found to be incidents of employment, and gestures of reciprocation were themselves found to be "reasonable and necessary activity incidental to" such parties, Tate's accident would still not satisfy the criteria articulated in *Pacheco*.

3. *Tate's injury did not occur as a risk associated with employment.*

Tate's final argument relies on a "positional risk" theory based on the notion that injuries that occur on an employer's premises are compensable. In essence, Tate posits a *per se* rule imposing workers' compensation liability for all injuries sustained by an employee on an employer's premises. We are unaware that any jurisdiction has adopted such a *per se* rule for compensability, based solely upon the location at which an injury occurs. *See* 1 Modern Workers Compensation § 110:7 (M. Canavan ed. 1993); 1A Larson § 22.20.

Injuries occurring on an employer's premises are covered by workers' compensation only insofar as they arise out of employment-related risks.[8] *See, e.g., Hayes v. Gibson Hart Co.*, 789 S.W.2d 775 (Ky.1990) (fall over gob of concrete); *Dupper v. Liberty Mut. Ins. Co.*, 105 N.M. 503, 734 P.2d 743 (1987) (trip over sprinkler head); *Fisher v. Mayfield*, 49 Ohio St.3d 275, 551 N.E.2d 1271 (1990) (fall on steps). Where an employee visits an employer's premises for a purely personal reason, an injury sustained during such a visit is not compensable. *See, e.g., MacDonald v. Michigan Bell Tel. Co.*, 132 Mich.App. 688, 348 N.W.2d 12 (1984) (injury sustained when employee returned to employer's premises to retrieve keys not compensable); *Heverly, supra*. The pivotal issue in these cases is whether the employee's presence on the employer's premises at the time of the injury is required by the nature of the employment. For example, an injury sustained by an employee who, while on vacation, visits the employer's premises in order to gather nuts for his personal consumption is not compensable. *Williams, supra*. By contrast, where an employer requires that an employee come to the workplace to pick up a paycheck, an injury sustained by the employee while on premises is compensable. *Dunlap v. Clinton Valley Center*, 169 Mich.App. 354, 425 N.W.2d 553 (1988); *Texas Gen. Indem. Co. v. Luce*, 491 S.W.2d 767 (Tex.Ct.App.1973).

Because an injury must arise out of an employment-related risk, injuries occurring during vacation are generally not compensable. *See, e.g., Yorkin v. Volvo Distrib. Co.*, 143 N.J.Super. 474, 363 A.2d 908 (1976) (injury occurring during vacation tacked onto end of business trip noncompensable); *Mil-*

---

**8.** Tate cites the following cases purporting to support the contention that her fall is compensable because it occurred on Haw Tel's premises: *Denny v. Kostadinovski*, 117 Mich.App. 517, 324 N.W.2d 19 (1981); *Grimaldi v. Shop Rite Big V*, 90 A.D.2d 608, 456 N.Y.S.2d 176 (1982); *Kerner v. New York State Roswell Park Mem. Inst.*, 70 A.D.2d 678, 416 N.Y.S.2d 365 (1979); *Fidelity & Casualty Co. of New York v. Kennard*, 162 Neb. 220, 75 N.W.2d 553 (1956); and *Rowe v. Riess*, 30 Ohio Misc.2d 28, 506 N.E.2d 1237 (1986). In *Denny, supra*, the court denied workers' compensation because it found the injury did not occur in the course of employment. The other cases are distinguishable by virtue of the single fact that, in each instance, the accident occurred when the claimant was either actively engaged in his/her work activities or commuting either to or from the employer's premises for purposes of working.

*ler v. Bill Miller's Riviera, Inc.*, 21 N.J.Super. 112, 90 A.2d 889 (1952) (denying compensation for injury occurring during vacation, notwithstanding fact that employer requested injured employee to purchase some fruit for use at place of employment); *LaMott v. City of West Columbia*, 259 S.C. 594, 193 S.E.2d 592 (1972) (death of fireman on vacation, who drowned while voluntarily assisting in search for sunken boat, not compensable). Cases departing from the general rule tend to involve circumstances in which vacationing employees are required by the employer to return to the work premises during the vacation. *See, e.g., Luce, supra.* This appeal does not involve such a case.

Contrary to Tate's contention, her desire for cake, rather than any employment-related duty, was the factor that motivated her to return to Haw Tel's premises. In the absence of a work connection, the fact that the injury occurred on Haw Tel's premises is irrelevant for purposes of workers' compensation.[9]

Based on its assessment of the record, the Board concluded that Tate's presence at Haw Tel at the time of her accident could not be said "to have been required by the nature of her employment," but "[r]ather ... was personal." We agree. Consequently, the Board properly denied Tate's claim.

B. *The Board's Failure Expressly To Acknowledge The Statutory Presumption Of Compensability Contained In HRS § 386–85(1) Does Not Constitute Reversible Error.*

■ HRS § 386–85(1) (1985) creates a statutory presumption of compensability (the presumption).[10] The presumption imposes upon the employer the burden of going forward with the evidence and the burden of persuasion. *Chung*, 63 Haw. at 650, 636 P.2d at 726 (citing *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972)). The employer may over-

come the presumption only with substantial evidence that the injury is unrelated to the employment. *Id.* Evidence, to be substantial, must be credible and relevant. *Akamine*, 53 Haw. at 409, 495 P.2d at 1167.

■ The Board's decision contains no explicit reference to the presumption. Tate argues that this omission supports an inference that the Board failed to consider the presumption and that, in fact, the Board shifted the burden from employer to employee.

This court has not ruled upon the significance of a failure on the part of the Board expressly to acknowledge the presumption in a decision regarding compensability of a claim, but the Intermediate Court of Appeals [ICA] has. In *Freitas v. Pacific Contractors Co.*, 1 Haw.App. 77, 613 P.2d 927 (1980), the Board had not explicitly referred to the statutory presumption. The appellants contended that if the presumption had been applied a different result would have been reached and their claim would have been deemed compensable. They argued that, because it was not, the presumption had been "erroneously ignored." *Id.* at 85, 613 P.2d at 932.

Labeling the argument "rather circular," the ICA observed that although "the Board should generally state whether or not it has in fact applied the presumption," its failure to do so does not, in and of itself, prejudice a claimant. *Id.* at 85, 613 P.2d at 933. We agree. Merging our holding in *Akamine*, 53 Haw. at 408, 495 P.2d at 1166 ("The presumption ... may be rebutted only by substantial evidence that [the injury] is unrelated to employment."), with that of the ICA in *Freitas*, we deem the issue not to be whether the Board has explicitly referred to the presumption, but whether the presumption has been rebutted by substantial evidence.

The Board's conclusion that Tate was not engaged in employment-related activity when she sustained her injury is supported by

---

**9.** Obviously, the location of the accident is relevant to Tate's pending tort claim.

**10.** HRS § 386–85 (1985) provides in relevant part:

**Presumptions.** In any proceeding for the enforcement of a claim for compensation un-

der this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury[.]

substantial evidence. Most significant is the showing that Tate's presence on her employer's premises at the time she sustained her injury was neither required nor requested by Haw Tel. She came to the building during her vacation for personal reasons—initially to thank her co-workers and later to retrieve a piece of cake for herself. It was while on this second errand that Tate slipped and fell. Tate's visit in no way benefitted Haw Tel, nor was it actuated by any intent to do so.

The Board's task was to "weigh and consider the evidence offered by the employer against the evidence offered by the claimant[ ] supportive of the claim." · *Acoustic, Insulation & Drywall, Inc. v. Labor and Indus. Relations Appeal Bd.*, 51 Haw. 312, 317, 459 P.2d 541, 544 (1969). Where, as here, substantial evidence rebutting the presumption was adduced by the employer, "this court cannot declare that the ... [B]oard [was] clearly erroneous in its determination that the weight of the evidence [lay] with one party or the other." *Akamine*, 53 Haw. at 416, 495 P.2d at 1170 (Levinson, J., dissenting).

### IV. CONCLUSION

Over twenty years ago, Justice Bernard H. Levinson opined that "[w]hile the line may be hard to draw between what is or is not compensable, there is ... a difference between employment itself, an incident of employment[,] and an incident of an incident of employment." *Pacheco*, 54 Haw. at 78, 502 P.2d at 1405–06 (Levinson, J., dissenting).

Today we are dealing with what is, at most, an incident of an incident of employment. While the line between what is or is not compensable remains "hard to draw," the side upon which certain types of activities belong is, at times, relatively simple to determine. An accident occurring in the course of a personal mission—such as retrieving a piece of cake initially given to former co-workers as a "thank you" present by a retiring employee—is one such activity. We hold that the injuries sustained by Tate did not arise out of and in the course of her employment because her activity entailed no conceivable benefit to Haw Tel.

In so doing, we heed Justice Levinson's warning that the court, in addressing workers' compensation cases, must be careful not to "set itself adrift ... without chart or compass." *Pacheco*, 54 Haw. at 80, 502 P.2d at 1407 (Levinson, J., dissenting). We likewise acquiesce in his admonition "to consider the following oft-quoted passage" from *The Voyages of Sinbad the Sailor:*

> And, lo, the master of the ship vociferated and called out, threw down his turban, slapped his face, plucked his beard, and fell down in the hold of the ship by reason of the violence of his grief and rage. So all the merchants and other passengers came together to him and said to him, "O master, what is the matter?" and he answered them: "Know, O Company, that we have wandered from our course, having passed forth from the sea in which we were, and entered a sea of which we know not the routes."

*Id.* at 81, 502 P.2d at 1407.

The route before us today is navigable, as long as we stay the course by reminding ourselves of a few basic principles. Injuries shall be compensated only if they arise out of or in the course of employment. HRS § 386-3. An employment custom or practice that benefits the employer constitutes work connection. 1A Larson § 20.00. Injuries sustained on an employer's premises are compensable either if they occur in the furtherance of an employer's interests or if the nature of employment requires the employee to be present at the time of injury. *Heverly, supra.*

With these principles in mind, the Board's decision denying Tate's claim for workers' compensation is affirmed.