188 P.3d 753

**Agaese F. MOI, Claimant–Appellant**

v.

**STATE of Hawai'i, DEPARTMENT OF PUBLIC SAFETY, Employer–Appellee, Self–Insured.**

**No. 27557.**

Intermediate Court of Appeals of Hawai'i.

May 21, 2008.

As Corrected June 19, 2008.

---

Scott T. Strack, on the briefs, for Claimant–Appellant.

James E. Halvorson, Julie A. Passa, Deputy Attorneys General, Department of the Attorney General, State of Hawai'i, on the briefs, for Employer–Appellee.

FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.

Opinion of the Court by NAKAMURA, J.

This appeal presents the question of whether an adult corrections officer, who was injured while bowling, is entitled to compensation under the Hawai'i workers' compensation law. We hold that the injuries sustained by the adult corrections officer were not work-related. We therefore affirm the decision of the Labor and Industrial Relations Appeals Board (LIRAB) to deny the adult corrections officer's claim for workers' compensation.

Claimant–Appellant Agaese F. Moi (Moi) was employed by Employer–Appellee State of Hawai'i, Department of Public Safety (DPS or Employer), as an adult corrections officer at the Oahu Community Correctional Center (OCCC). Moi sustained injuries while bowling at a bowling tournament, one of the activities organized to celebrate Public Safety Month. Moi was on unpaid leave and was away from his work premises when he was injured.

In a Decision and Order entered on September 19, 2005, the LIRAB concluded that the DPS had presented substantial evidence to show that Moi did not sustain injuries arising out of and in the course of his employment. The LIRAB therefore denied Moi's claim for compensation. In doing so, the LIRAB reversed the decision of the Director of the Department of Labor and Industrial Relations (the Director), who had determined that Moi's injuries were work-related.

On appeal, Moi challenges the LIRAB's ruling that his injuries were not work-relat-ed. He argues that the LIRAB erred in: 1) concluding that the DPS presented substantial evidence to overcome the statutory presumption of compensability;[1] 2) finding that the DPS did not require employees to participate in the bowling tournament or make it part of the services of an employee; and 3) finding that the DPS did not derive a substantial direct benefit from the bowling tournament beyond the intangible value of improved employee morale. We disagree with Moi's arguments.

## BACKGROUND

May 2003 was designated "Public Safety Month" in Hawai'i, an annual celebration to acknowledge and thank public safety workers. Various recreational and social activities were planned for Public Safety Month, including golf tournaments, a softball tournament, a fishing tournament, and a bowling tournament. James Propotnick, the acting director of the DPS, issued an inter-office memorandum to all DPS employees thanking them for their dedication and hard work, informing them of upcoming recreational and social activities in connection with Public Safety Month, and encouraging them to participate. Among the activities identified in the memorandum was a bowling tournament to be held at Aiea Bowl, a facility that was not on DPS property and was not operated or controlled by the DPS.

The Public Safety Month activities were planned or coordinated by various DPS employees—there was no single person in charge. Sergeant Randy Young of OCCC planned the bowling tournament. The tournament was open to state as well as federal public safety employees. Participation was limited due to the fixed number of bowling lanes at Aiea Bowl and restrictions were placed on the number of slots allotted to each agency or division. Participants in the bowling tournament were required to pay an entry fee of $15. DPS employees who were

1. Hawaii Revised Statutes (HRS) § 386–85 (1993) provides in relevant part:

Presumptions. In any proceeding for the enforcement of a claim for compensation under [the Hawai'i workers' compensation law] it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury[.]

scheduled to work when the tournament was being held were expected to take vacation leave if they wanted to participate. The DPS did not provide any direct financial assistance to the tournament but did acquiesce in certain employees using work time and office telephones to plan, coordinate, and publicize the event.

Moi had not planned to participate in the bowling tournament because his scheduled work shift at OCCC extended past the start time for the tournament. However, on the day of the tournament, Moi changed his mind and requested time off for "personal business" to attend the event. Moi did not have any accrued vacation time, so he requested leave without pay, which his supervisor granted. Moi paid the $15.00 entry fee. While attempting to bowl at the tournament, Moi slipped and fell, sustaining injuries to his head, shoulder, ribs, and back.

## DISCUSSION

### I. The Applicable Law

■■■ Hawaii Revised Statutes (HRS) § 386–85(1) (1993) establishes a presumption that an employee's claim for workers' compensation is for a covered work injury. In order to overcome this statutory presumption, the employer has the initial burden of producing substantial evidence that, if believed, could rebut the presumption that the injury is work-related. *Nakamura v. State*, 98 Hawai'i 263, 267, 47 P.3d 730, 734 (2002). If the initial burden of production is satisfied, the LIRAB must weigh the employer's evidence against the evidence presented by the claimant. *Id.* at 268, 47 P.3d at 735. The employer bears the ultimate burden of persuasion, and the claimant is given the benefit of the doubt, on the work-relatedness issue. *Id.*

■■■ In reviewing the LIRAB's decision on this issue, we give deference to the LIRAB's assessment of the credibility of witnesses and the weight the LIRAB gives to the evidence.

> It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the

agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

*Id.* (block quote format changed) (quoting *Igawa v. Koa House Restaurant*, 97 Hawai'i 402, 409–10, 38 P.3d 570, 577–78 (2001)). We review the LIRAB's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *Id.* at 267, 47 P.3d at 734.

■■ For an injury to be compensable under the Hawai'i workers' compensation law, "there must be a requisite nexus between the employment and the injury." *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994). The required nexus is set forth in HRS § 386–3 (Supp.2007), which provides, in relevant part, that an employee who "suffers personal injury . . . by accident *arising out of and in the course of the employment*" is entitled to compensation. (Emphasis added.) Hawai'i has adopted the unitary test for determining whether a claimed injury is sufficiently work-related to be compensable. *Tate*, 77 Hawai'i at 103, 881 P.2d at 1249. Under the unitary test, an injury arises out of and in the course of the employment if there is "a causal connection between the injury and any incidents or conditions of employment." *Id.*

In applying the unitary test, the Hawai'i Supreme Court has stated:

> "An injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto." 1 A. Larson, The Law of Workmen's Compensation § 14.00 (1993) [hereinafter Larson].

Activities, such as seeking personal comfort, "going and coming," and *engaging in recreation have no inherent status as part of the employment.* 1A Larson § 21.81. As distinguished from actual performance of the direct duties of the job, these activities must be established as incidents of the work itself. *Id.* In explaining the method

by which an activity shall be characterized as "incidental" to work, Larson writes: "[T]he word 'incident' contains an element of the usual and reasonable, both as to the needs to be satisfied and as to the means used to satisfy them." *Id.*

*Id.* at 103–04, 881 P.2d at 1249–50 (brackets in original).

This court, in *Ostrowski v. Wasa Elec. Serv., Inc.*, 87 Hawai'i 492, 498, 960 P.2d 162, 168 (App.1998), adopted the factors recommended in Larson's Workers' Compensation Law, a leading treatise on workers' compensation, in evaluating whether an employee's participation in social or recreational activities was work-related. These factors (the "Larson factors") are as follows:

Recreational or social activities are within the course of employment when

(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* § 22.01 (2007) (hereinafter, "Larson's").

Citing our decision in *Ostrowski,* the LIRAB applied the Larson factors to evaluate whether Moi's bowling activity, and thus his bowling injuries, was work-related. The LIRAB found that Moi's bowling activity did not satisfy any of the Larson factors in concluding that the DPS had presented substantial evidence to prove that the injuries Moi sustained while bowling did not arise out of and in the course of his employment.

II. **The LIRAB Properly Determined That Moi's Bowling Injuries Were Not Work–Related**

Moi argues that the LIRAB erred in concluding that the DPS presented substantial evidence to rebut the statutory presumption of compensability because the LIRAB erred in finding that Moi's injuries were not work-related under the Larson factors. We disagree.

A. **The LIRAB's Findings**

In its decision, the LIRAB made the following pertinent findings of fact:

5. ... Aiea Bowl was located away from Employer's property and was not operated or controlled by Employer.

. . . .

7. While Employer had encouraged its employees to attend the bowling tournament, no one was required to go.

8. Employer did not provide any direct financial assistance to fund the bowling tournament. Employees who participated in the tournament paid for their own entry fees....

. . . .

10. ... Employer's policy was that employees who were scheduled to work were expected to sign out for leave if they wanted to participate in the bowling tournament.

. . . .

14. On May 29, 2003, [Moi], while attempting to bowl at the bowling tournament, sustained a personal injury. [Moi] was injured around 1:30 p.m., and was on leave without pay at the time of the injury.

15. Employer received no substantial direct benefit from the bowling tournament, other than improved morale, fellowship, and camaraderie among employees, which are difficult to measure or quantify. While Warden Sakai believed that improved morale could lead to improved work attendance, or less over-time, or less employee turnover, he acknowledged that it would be difficult to prove that a direct relationship existed between these factors.

16. The bowling tournament was strictly a social event. There was no evidence that Employer made speeches or presented awards at this activity, and no evidence that bowling at the tournament was made

a part of the services of an ACO [ (Adult Corrections Officer) ] employee.

The LIRAB then applied the three Larson factors in determining that Moi's bowling injuries were not work-related.[2] The LIRAB found in relevant part:

The first [Larson factor] did not apply in this case, because the bowling tournament occurred off work premises at a bowling alley that was not operated or controlled by Employer.

As for the second, we found no employer compulsion or requirement to attend the bowling tournament, and no showing that the bowling tournament was made a part of the services of the ACO employee.

. . . .

Other than Employer's general encouragement to attend the bowling activity, there was no evidence that attendance at this event was required. On the contrary, testimonies from various witnesses at trial firmly established that attendance at the bowling tournament was strictly voluntary.

Additionally, Employer's involvement or sponsorship, if any, in the bowling tournament was limited to encouraging participation in the activity, granting leave or vacation request[s] to attend the event, and allowing employees to use office telephones and some work time to organize, coordinate, and publicize the event. Employer did not impliedly or expressly require participation. Employer did not directly finance the tournament. Employer did not plan or coordinate the event. Employees, and not Employer, paid the entry or lane fees. Employer expected employees to take leave to attend the tournament, which [Moi] did in this case. Employer did not control the off-premises site where the tournament and injury took place. Considering the totality of the circumstances, we conclude that Employer's sponsorship, if any, of the bowling tournament was insignificant and insufficient to establish the necessary work connection to bring the social or recreational activity within the scope of employment. . . .

With respect to the third consideration of benefit to Employer, we found that Employer derived no substantial direct benefit from the bowling activity beyond the intangible employee morale. [Moi] was unable to prove with evidence that the bowling activity resulted in substantial, direct benefits to Employer in the form of improved attendance, less turnover, increased productivity, and cost savings from paying less over-time.

Based on its factual findings and the application of the Larson factors, the LIRAB concluded that "Employer has presented substantial evidence to show that [Moi] did not sustain a personal injury . . . arising out of and in the course of employment." Accordingly, the LIRAB denied Moi's claim for compensation.

### B. Moi Failed to Properly Challenge the LIRAB's Findings of Fact in his Point of Error on Appeal

■ At the outset, we note that although Moi challenges the factual findings underlying the LIRAB's conclusion that the DPS had rebutted the statutory presumption of compensability in the *argument* section of his brief, he fails to identify the particular findings of fact he disputes in his *point of error*. The sole point of error stated in Moi's opening brief is:

The [LIRAB] below erred in ruling that [Moi's] injury was not work related, relying primarily on *Ostrowski v. WASA Elec[.] Serv. Inc.*, 87 [Hawai'i] 492, 960 P.2d 162 (App.1998)[,] and supporting their decision with citations of decisions from other jurisdictions.

Moi's point of error is insufficient under Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(2005) to challenge the LIRAB's findings of fact. At the time Moi's opening brief was filed, HRAP Rule 28(b)(4) provided in relevant part:

[T]he appellant shall file an opening brief, containing the following sections . . . :

2. Although the LIRAB discussed the Larson factors under the "conclusions of law" section of its decision, the LIRAB's assessment of whether the Larson factors were satisfied is properly characterized as findings of fact.

(4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:

. . .

(C) *when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error;* [3]

. . . .

*Points not presented in accordance with this section will be disregarded,* except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

(Emphases added.)

The LIRAB's findings of fact, if unchallenged, support the LIRAB's conclusion that the DPS met its burden of proving that Moi's bowling injuries were not work-related. Thus, Moi's failure to challenge the LIRAB's findings of fact in his point of error provides a basis for us to affirm the LIRAB's decision. *See Wisdom v. Pflueger,* 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983) ("If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid."); *Okada Trucking Co., Ltd. v. Bd. of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact . . . that are not challenged on appeal are binding on the appellate court."). Even if we overlook the deficiency in Moi's brief, however, we would still affirm the LIRAB's decision for the reasons discussed below.

### C. The Record Supports the LIRAB's Decision

■ Moi concedes that the LIRAB correctly found that his bowling activity did not meet the first Larson factor for demonstrating the work-relatedness of a recreational or social activity. Moi argues, however, that the LIRAB erred in finding that the second and third Larson factors had not been satisfied in ruling that the DPS presented substantial evidence to overcome the statutory presumption of compensability.

We conclude that the DPS presented substantial evidence to rebut the presumption that Moi's injuries were work-related. The undisputed evidence showed that Moi was injured while on unpaid leave. *See Tate,* 77 Hawai'i at 106, 881 P.2d at 1252 ("Because an injury must arise out of an employment-related risk, injuries occurring during vacation are generally not compensable."). Moi was injured while bowling, an activity that was not part of his work duties, and while he was at Aiea Bowl, a site that was off his work premises and not operated or controlled by the DPS. *See* 2 Larson's §§ 21.08[1] and 22.03[1] (indicating that recreational activities have no inherent status as part of the employment and that off-premises recreational activities that take place after work are presumptively disassociated with employment). In addition, the DPS presented evidence that employees' attendance at the bowling tournament was strictly voluntary; that it did not directly finance the tournament; that employees paid their own entry fees; and that employees were expected to take leave to attend the tournament. The record establishes that there was no causal connection between Moi's injuries and any incidents or conditions of Moi's employment. ·

The LIRAB did not err in finding that the second and third Larson factors had not been satisfied. As to the second Larson factor, there was substantial evidence to support the LIRAB's finding that the DPS did not expressly or impliedly require employees to

---

**3.** After Moi's opening brief was filed, HRAP Rule 28(b)(4)(C) was amended, effective January 1, 2008, to read as follows:

(C) when the point involves a finding or conclusion of the court or agency, either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions[.]

Moi's point of error is also insufficient under the amended version of HRAP Rule 28(b)(4)(C).

participate in the bowling tournament or make the tournament part of the services of an employee. Among other things, the evidence showed that attendance at the bowling tournament was strictly voluntary, on the employee's own time, and at the employee's expense. The tournament was planned and organized by the employees, not the employer. We discern no error in the LIRAB's determinations that 1) the DPS's general encouragement of employees to attend the bowling tournament did not constitute an express or implied requirement that they attend and 2) "the [DPS's] sponsorship, if any, of the bowling tournament was insignificant and insufficient to establish the necessary work connection to bring the [tournament] within the scope of employment."

As to the third Larson factor, the LIRAB found that the DPS derived no substantial direct benefit from the bowling tournament beyond the intangible value of improvement in employee morale. Based on our review of the record, we conclude that the LIRAB did not err in applying the third Larson factor.

In discussing the third Larson factor in *Ostrowski*, we noted:

> [A] majority of the courts have held that benefit to an employer through increased employee morale and efficiency is not alone enough to bring a recreational activity within the course of employment. As Larson points out, all recreational activity tends to improve employee efficiency and morale whether work-related or not. Such "vague and general benefit" is not sufficient in itself to bring a recreational activity within the course and scope of employment.

*Ostrowski*, 87 Hawai'i at 502, 960 P.2d at 172 (quoting *Jackson v. Cowden Mfg. Co.*, 578 S.W.2d 259, 264 (Ky.Ct.App.1978)). Stated another way, every social and recreational activity of an employee can be said to "benefit" an employer through increased employee efficiently and morale. Thus, something more is required to render the activity work-related, "otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities." 2 Larson's § 22.05[3].

In support of his argument that the LIRAB's finding on the third Larson factor was erroneous, Moi cites to the deposition testimony of Theodore Sakai, who was then the Warden of Waiawa Correctional Facility and was also a former director of the DPS. Warden Sakai testified he believed that the activities associated with Public Safety Month resulted in increased employee morale, that better morale means better attendance, and that improved attendance translates into lower overtime costs. Acting DPS Director Propotnick agreed with Warden Sakai that the Public Safety Month activities were a morale booster. But Acting Director Propotnick believed it was "a pretty far leap" to say that increased morale from the activities led to better attendance and reduced overtime costs. Moi did not offer any evidence to quantify or establish a measurable relationship between the improvement in morale from the bowling tournament and other Public Safety Month activities and the purported reduction in overtime costs.

After considering the evidence, the LIRAB found:

> Employer received no substantial direct benefit from the bowling tournament, other than improved morale, fellowship, and camaraderie among employees, which are difficult to measure or quantify. While Warden Sakai believed that improved morale could lead to improved work attendance, or less over-time, or less employee turnover, he acknowledged that it would be difficult to prove that a direct relationship existed between these factors.

Contrary to Moi's claim, Warden Sakai's testimony did not show that the DPS "derive[d] substantial direct benefit from the [bowling tournament] *beyond* the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." 2 Larson's § 22.01 (emphasis added). Rather, Warden Sakai described the type of "vague and general benefit" that is inherent in improved employee morale and is insufficient to render the activity work-related. *Ostrowski*, 87 Hawai'i at 502, 960 P.2d at 172; *see Burnett v. INA*, 810 S.W.2d 833, 837–38 (Tex.App.1991). In any event, we give deference to the LIRAB's

assessment of the weight given to the evidence and its evaluation of the credibility of witnesses. *Nakamura,* 98 Hawai'i at 268, 47 P.3d at 735.

 We affirm the LIRAB's decision. In doing so, we agree with the views expressed by the New York Court of Appeals in denying a workers' compensation claim for injuries sustained during a softball game.

> Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit, are not within the compass of the Workmen's Compensation Law. Nor is it of any operative consequence that the employer acquiesced in, or contributed some financial aid to, such activities. The slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life. In a case such as the one before us, the granting of a compensation award would not only do violence to the letter of the statute but would offend against its spirit, by penalizing employers who, without prospect of profit or benefit, co-operate in enabling their employees to engage in social or athletic recreation on their own time and away from the company premises.

*Wilson v. General Motors Corp.,* 298 N.Y. 468, 84 N.E.2d 781, 784 (1949) (citations omitted).

## CONCLUSION

The September 19, 2005, Decision and Order of the LIRAB is affirmed.

