RENEE K. LAMOYA, Claimant-Appellee,
v.
A.L. KILGO COMPANY, INC., and EAGLE INSURANCE COMPANIES, INC., Employer/Insurance Carrier-Appellant
No. 28042
Intermediate Court of Appeals of Hawaii.
August 29, 2008.
On the briefs:
Sidney J.Y. Wong, Colette H. Gomoto, (Wong & Oshima), for Employer/Insurance Carrier-Appellant.
Anson O. Rego, for Claimant-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and LEONARD, JJ.
In this workers' compensation case, Employer-Appellant A.L. Kilgo Company, Inc. and Insurance Carrier-Appellant Eagle Pacific Insurance Company (collectively, Kilgo), appeal from the June 14, 2006, Decision and Order of the Labor and Industrial Relations Appeals Board (LIRAB). In the Decision and Order, the LIRAB concluded that Claimant-Appellee Renee K. Lamoya (Lamoya or Claimant) was permanently and totally disabled (PTD) on a medical basis as a result of her 1999 work injury. In doing so, the LIRAB modified the decision of the Director of Labor and Industrial Relations (the Director), who had determined that Lamoya had a permanent partial disability of 35% of the whole person, but was not PTD.
On appeal, Kilgo contends that the LIRAB erred in: 1) basing its findings of fact on the testimony of Dr. Linda Rowan, Lamoya's primary treating physician; 2) failing to address or make findings based on evidence that Kilgo presented in support of its claim that Lamoya was not PTD; and 3) applying the wrong legal standard in concluding that Lamoya was PTD. Kilgo's contentions boil down to claims that the LIRAB erred in crediting the evidence presented by Lamoya over that presented by Kilgo, and that there was insufficient evidence to support the LIRAB's determination that Lamoya was PTD on a medical basis. We disagree with Kilgo's arguments and affirm the LIRAB's Decision and Order.[1]

I.
Lamoya was working as a cashier for A.L. Kilgo Company, Inc. when she injured her lower back on May 31, 1999, as she lifted a heavy bag onto a table. She returned to work in 1999 and worked intermittently on a light-duty basis, but continued to experience back pain. In January 2000, Dr. Jeffrey Lee, an orthopedic surgeon, diagnosed Lamoya with lumbar disc degeneration and spinal stenosis at L4-L5 and L5-S1, with back and leg pain. On February 15, 2000, Dr. Lee performed surgery on Lamoya that consisted of posterolateral arthrodesis at L4-S1, posterior segmental spinal instrumentation with isola at L4-S1, two-level decompressive laminotomy, facetectomy, and foraminotomy at L4-L5 and L5-S1, and right iliac bone graft.

A.
The back surgery was not successful in alleviating Lamoya's pain. She continued to experience low back pain and right lower extremity radiculopathy.
From 2000 to 2002, Lamoya was prescribed a varying mix of pain-management and anti-depressant medications, including Oxycontin, Neurontin, Mobic, Elavil, Paxil, Zanaflex, and Darvocet. During this time period, several doctors, including Lamoya's treating physicians, opined that despite Lamoya's continuing pain, she could return to some type of sedentary light-duty work. A June 12, 2001, General Functional Capacity Evaluation also concluded that Lamoya was "able to work at the Light Physical Demand Level for an 8 hour day."
On May 8, 2002, Dr. James Langworthy saw Lamoya for an independent medical examination (IME) to determine her permanent disability rating. Dr. Langworthy diagnosed Lamoya with, among other things, chronic low back pain and right L5 radiculopathy. Pursuant to the 5th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, Dr. Langworthy placed Lamoya in Diagnostic Related Estimate (DRE) lumbar Category V, the highest DRE category, and rated Lamoya at 25% permanent partial disability of the whole person for her low back injury.
Lamoya participated in an April 12, 2002, vocational rehabilitation (VR) plan which identified the position of a general office clerk as a suitable vocational goal. Lamoya began a thirty-week office training program to enhance her employability but she was not able to complete the training program due to back pain. A second VR plan dated November 23, 2002, was developed which identified a ticket clerk or cashier position as Lamoya's vocational goal and provided for sixteen weeks of job placement services. Lamoya was not placed in a job, and on March 28, 2003, Lamoya's request for VR services was closed at her request.

B.
Dr. Rowan took over as Lamoya's primary treating physician in August of 2002. In February 2003, Lamoya began experiencing radiating pain down both legs with numbness and tingling. In July 2003, Dr. Rowan noted that Lamoya's pain had worsened and that Lamoya complained of flare-ups of back and bilateral lower extremity pain occurring two to three times a week, lasting thirty to forty-five minutes, and consisting of pain that rose to a level of ten out of ten.
On October 15, 2003, the Director issued a decision which found that Lamoya had a permanent partial disability of 500 of the whole person. The Director awarded permanent partial disability benefits as well as benefits for temporary total disability, temporary partial disability, and disfigurement. Lamoya appealed the Director's decision to the LIRAB, raising the extent of her permanent disability as the issue on appeal.
Lamoya continued to experience pain. On March 1, 2004, Lamoya went to the emergency room when a flare-up of back and leg pain prevented her from walking and could not be relieved with her usual medication. Lamoya was released after receiving an injection of pain medication.
On June 7, 2004, Dr. John Henrickson conducted an IME of Lamoya for Kilgo.[2] Dr. Henrickson's IME report stated that Lamoya's condition was not stable or permanent and that Lamoya's condition had declined in the second half of 2003 with the development of left L5 radiculopathy. Dr. Henrickson also opined that Lamoya could return to light-duty work for four hours a day.
Kilgo also hired Dr. Raymond Taniguchi to conduct a review of Lamoya's medical records. Dr. Taniguchi concluded that Lamoya's condition had been permanent and stationary since Dr. Langworthy's 2002 rating, and he agreed with Dr. Langworthy's 25% whole body impairment rating.
During 2005, Dr. Rowan noted that Lamoya continued to experience high levels of pain with flare-ups of pain at the level of ten out of ten. Medications kept Lamoya semi-functional but she continued to experience radiating pain in the bilateral lower extremities with numbness and tingling in her toes. On October 17, 2005, Dr. Rowan reported that Lamoya could only sit for thirty minutes before having to get up and move around, but that standing resulted in intense pain down her left leg, making it difficult for her to walk.

C.
The LIRAB held a hearing on the appeal on February 28, 2006. Lamoya testified that her condition had worsened over the years and she continued to take high levels of medication. She stated that her pain level at the time of the hearing was a level eight out of ten, even though she was on medication, and that her legs were numb and tingling. Lamoya testified that she could only lift ten to twenty pounds, she could not stand or walk for more than thirty minutes, and she had difficulty bending, putting on pants and underwear, going down stairs, and sitting for prolonged periods of time.
Dr. Rowan testified that Lamoya experienced increased pain symptoms and range of motion deficits in 2003. Dr. Rowan explained that although she had opined in 2002 that Lamoya could perform light-duty work, Dr. Rowan now believed that Lamoya would not be able to work. Dr. Rowan testified that Lamoya would not be able to engage in any type of regular full-time employment and that Lamoya could not even perform light sedentary duties for four hours a day. Dr. Rowan stated that her assessment was based on Lamoya's increased pain symptoms, Lamoya's failure to improve despite attempts at pain management, and the lack of further treatment options at that point in time.
Based on the evidence presented, the LIRAB found in relevant part as follows:
Decline in Claimant's Condition
35. Based on the reports from Dr. Henrickson and Dr. Rowan and the medical evidence in the file, we find that there was a decline in Claimant's condition from July of 2003. At or around that time, Claimant was diagnosed with left radiculopathy. Her left-sided symptoms were significantly greater than the right. Also around that time, Claimant reported worsened pain symptoms and increased frequency of intense flare-ups. It appears that the decline in Claimant's condition from 2003 prompted Dr. Rowan to change her opinion regarding Claimant's ability to perform part-time light work.
Claimant's Inability to Work
36. Based on the 2002 impairment rating by Dr. Langworthy that had assessed Claimant at DRE category V with a rating of 25% permanent partial impairment of the whole person, the diagnosis of L5 left radiculopathy with numbness and tingling in 2003, Claimant's report of increased frequency of intense flare-ups from July of 2003, the opinion of Dr. Henrickson that Claimant did experience a decline in her condition in July of 2003, the opinions of Dr. Rowan at trial that the increased symptoms from 2003 prevented Claimant from returning to any work, and the credible testimony from Claimant regarding her symptoms and the effect that they had on her activities of daily living, we find that Claimant is unable to perform any gainful employment in the labor market, due to the effects of her May 31, 1999 work injury.
The LIRAB concluded that Lamoya was PTD on a medical basis as a result of her work injury.

II.
After a careful review of the record and the briefs submitted by the parties, we resolve the issues raised by Kilgo on appeal as follows:
1. We reject Kilgo's argument that the LIRAB erred in relying on Dr. Rowan's testimony in determining that Lamoya was PTD rather than evidence Kilgo presented in support of its claim that Lamoya was not PTD. In reviewing the LIRAB's decision, "we give deference to the LIRAB's assessment of the credibility of witnesses and the weight the LIRAB gives to the evidence." Moi v. State, Dept. of Public Safety, No. 27577, ___ Hawai`i ___, 188 P.3d 753, 2008 WL 2122838, *2 (App. May 21, 2008).
It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.
Nakamura v. State, 98 Hawai`i 263, 268, 47 P.3d 730, 735 (2002) (block quote format changed). We see nothing in the record that would justify overturning the LIRAB's decisions to credit Dr. Rowan's testimony and to assign that testimony greater weight than the conflicting evidence presented by Kilgo.
2. We also reject Kilgo's argument that there was insufficient evidence to support the LIRAB's determination that Lamoya was PTD. As noted, the LIRAB was entitled to credit the testimony of Dr. Rowan as well as the testimony of Lamoya. The testimony of Dr. Rowan and Lamoya, along with the other evidence cited by the LIRAB, provided substantial evidence to support the LIRAB's factual findings that Lamoya's condition declined from about July 2003 and that Lamoya "is unable to perform any gainful employment in the labor market" due to the effects of her work injury. We conclude that those factual findings are not clearly erroneous. Id. at 267, 47 P.3d at 734 (stating that factual findings are reviewed under the clearly erroneous standard). The LIRAB's factual findings, in turn, support its determination that Lamoya was PTD on a medical basis.

III.
The June 14, 2006, Decision and Order of the LIRAB is affirmed.
NOTES
[1] Kilgo also argues that Lamoya was not PTD on an odd-lot basis. `Under the odd-lot doctrine, an injured employee may be considered permanently and totally disabled if he or she is unable to obtain employment because of workrelated permanent partial disability combined with such factors such as age, education, and work experience." Bumanglag v. Oahu Sugar Co., Ltd., 78 Hawai`i 275, 281, 892 P.2d 468, 474 (1995). The LIRAB did not reach the question of whether Lamoya was PTD on an odd-lot basis so there is no decision of the LIRAB on this point for us to review. In any event, in light of our decision to affirm the LIRAB's determination that Lamoya was PTD on a medical basis, there is no need for us to address whether Lamoya would also qualify as PTD on an odd-lot basis.
[2] The purpose of Dr. Henrickson's IME was to determine whether a second back surgery that had been recommended by Dr. Lee was reasonable and necessary. Kilgo disputed the need for the second surgery and Dr. Lee eventually withdrew from Lamoya's care due to "overwhelming and extensive workers compensation issues that [were] constantly interfering with [his] plan of care." The parties agreed that Dr. Lee's withdrawal rendered moot the issue of whether Kilgo was liable for the surgery recommended by Dr. Lee.