FELONILA D. ANAMA, Claimant-Appellant,
v.
STATE OF HAWAI`I, DEPARTMENT OF HEALTH, Employer-Appellee, Self-Insured.
No. 27656.
Intermediate Court of Appeals of Hawaii.
March 31, 2009.
On the briefs:
Robin R. Horner, (Law Offices of Gray and Prouty), for Claimant-Appellant.
James E. Halvorson, John H. Murphy, Deputy Attorneys General, Department of the Attorney, General, State of Hawai`i for Employer-Appellee, self-Insured.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Claimant-Appellant Felonila D. Anama (Anama) appeals from the Decision and Order of the Labor and Industrial Relations Appeals Board (LIRAB), filed on November 9, 2005, in favor of Employer-Appellee State of Hawai`i, Department of Health (State). In its Decision, the LIRAB concluded that Anama was not entitled to workers' compensation benefits because she did not sustain a personal injury on November 15, 2002, that arose out of and in the course of employment. In doing so, the LIRAB reversed the decision of the Director of the Department of Labor and Industrial Relations (Director), who found that Anama had a major depressive disorder arising out of her employment because the State had not acted in good faith when disciplining Anama with termination from employment.
On appeal, Anama argues that the LIRAB erred in: 1) concluding that she did not suffer an injury arising out of and in the course of employment on November 15, 2002; 2) concluding that her psychological injuries were not compensable because they did not rise to the level of a clinical psychiatric disorder; 3) denying the admission of an exhibit containing the response of Anamas treating psychiatrist to a report prepared by a State-hired psychologist; and 4) failing to consider evidence supporting Anama's position and instead crediting evidence supporting the State's position.
We conclude that the LIRAB erred in failing to address whether there was just and proper cause for the State's disciplinary action against Anama. Without a ruling by the LIRAB on this issue, we cannot tell whether the LIRAB erred in its Decision and Order. We therefore vacate the Decision and Order and remand the case to the LIRAB for determination of whether there was just and proper cause for the State's disciplinary action against Anama and for further proceedings consistent with this Memorandum Opinion.

BACKGROUND

A. Facts
Anama was employed by the State as a registered nurse at the Hawai`i State Hospital. On November 15, 2002, the State informed Anama of a complaint alleging that she stole patient medication for her own use. The State advised Anama that it would conduct an investigation into the complaint.
On November 25, 2002, Anama saw her internist, Dr. Goodfredo Baclig, and complained of a cough and sore throat. Anama also told Dr. Baclig that she had been crying and having nightmares because of problems at work and felt she was being set up by coworkers. Dr. Baclig diagnosed Anama with adjustment disorder, with anxious mood, upper respiratory infection, and hypertension. The investigation into the complaint against Anama for medication theft was inconclusive, and the State took no disciplinary action against Anama on the complaint.
On December 24, 2002, the State notified Anama that she was under investigation for patient abuse. The alleged patient abuse stemmed from an incident in which a psychiatric patient at the Hawai`i State Hospital soiled her clothes and bedding with fecal matter. A nurse claimed that Anama decided to check the patient for fecal impaction, went to the shower where the patient was cleaning up, and inserted her gloved finger into the patient's anus. According to Anama, she was concerned that the patient might be constipated, obtained permission from the patient to check for constipation, and, in the presence of another nurse, examined the patient's peri-anal area for retained stool by palpitating the area around the anus, but did not insert her finger into the patient's anus.
On December 26, 2002, Anama saw Dr. Baclig. Anama was tearful, crying, and had a sad affect, and Dr. Baclig referred Anama to psychiatrist Dr. Celina Guerrero for psychotherapy. Anama saw Dr. Guerrero on December 30, 2002, and told the doctor about problems with co-workers predating the December 15, 2002, medication-theft complaint, the medication-theft complaint, and the allegations of patient abuse. Anama had symptoms that included difficulty sleeping, nervousness, depressed mood with crying episodes, and intrusive recollection of accusations against her. Dr. Guerrero identified an injury date of November 15, 2002, and diagnosed Anama with major depressive disorder, single episode, without psychotic features.
On February 12, 2003, Anama was notified by the State that she would be terminated as of February 28, 2003, for patient abuse. In his letter notifying Anama of the termination, the Administrator of the Hawai`i State Hospital stated:
The investigation substantiated that you were observed by another nurse to have done the rectal examination in the shower room. Although you deny that you completed the rectal examination, you did admit to an incident where the patient was in the shower. You admitted to doing a different kind of examination for constipation consisting of observation and palpation of the "perineal" area. This procedure of palpating the perineal area in assessing for constipation is not consistent based on standards of care. There was no documentation in the patient's chart either for a rectal procedure or for the observation and palpation of the perineal area for constipation. There was no Medical Doctor's order for either of these two procedures to be conducted and authorized. Although this might be an accepted procedure in a care home setting and acceptable for nurses to check geriatric patients for constipation, this patient is a psychiatric patient with sexual preoccupations, making it advisable for the nurse to refer such examination to a more formal assessment by a M.D. and in an examination room or in the patient's bed.
I have determined that the dismissal is for just and proper cause.
On February 20, 2003, Anama returned to Dr. Guerrero for treatment and continued regular treatments with Dr. Guerrero at least through late 2003. On September 3, 2003, Anama filed a workers' compensation claim on form WC-5, alleging that she "[d]eveloped anxiety, stress, and depression" due to false accusations from co-workers and supervisors. The WC-5 form identified the "Date of Accident" as November 28, 2002, and the "Date Disability Began" as February 24, 2003. Anama later clarified that November 28, 2002, was the date she manifested symptoms of stress and anxiety due to problems at work and that no specific incident occurred at work on November 28, 2002.

B. The Director's Decision
The Director issued a decision finding that Anama's claimed psychological injury, described as a major depressive disorder, was compensable as arising out of and in the course of employment. The Director's decision noted that Anama maintained that she had suffered a psychological injury "as a result of being belligerently confronted by a security guard, being falsely accused of stealing medication, and being falsely accused of performing an unauthorized rectal examination on a patient which resulted in her termination." On the other hand, the State argued that Anama's psychological injury was barred pursuant to Hawaii Revised Statutes (HRS) § 386-3 (Supp. 2008)[1] because the injury was the result of disciplinary action in the form of termination from employment.
In finding that Anama had sustained a compensable injury, the Director relied upon the opinion of psychiatrist Dr. Jon Streltzer, who opined that Anama's psychological injury was the result of her termination from work. The Director further relied upon the following statement of Dr. Streltzer as indicating the doctor's belief that Anama's termination for the alleged patient abuse was not reasonable:
As described by the Claimant and the medical records reviewed, including the incident reports, Ms. Anama's conduct appears to be understandable and is likely to have been considered appropriate in hospitals in the Philippines and perhaps in nursing homes in Hawaii also. Rectal examinations have generally been considered to be appropriate when clinically indicated and thought to be good medical practice on a regular basis. Presumably the same is true for nursing practice in conditions where medical resources are slim, such as hospitals in the Philippines and nursing homes, in general. The patient's description of the case does not sound abusive, and if a rectal examination was not considered appropriate practice for nurses at the Hawaii State Hospital, this appears to be something which she was not aware of given her prior training.
Based upon Dr. Streltzer's opinion, the Director found that
the employer did not act in good faith when disciplining the claimant with termination from employment as such action was questionable in light of the acknowledged duties of a nurse in a typical nursing home, the source of claimant's training, and a lack of evidence affirming that claimant was clearly instructed prior to the subject event that such an examination by a nurse would not be appropriate.

C. LIRAB Proceedings
The State appealed the Director's decision to the LIRAB. The First Amended Pretrial Order stated that the issues to be determined on appeal were:
a. Whether [Anama] sustained a personal injury on November 15, 2002, arising out of and in the course of employment.
b. What was [Anama's] average weekly wage at the time of the November 15, 2002 work injury.
The State filed a motion for summary judgment on the ground that HRS § 386-3 (c) barred Anama's workers' compensation claim. HRS § 386-3 (c) provides in relevant part:
A claim for mental stress resulting solely from disciplinary action taken in good faith by the employer shall not be allowed; provided that if a collective bargaining agreement or other employment agreement specifies a different standard than good faith for disciplinary actions, the standards set in the collective bargaining agreement or other employment agreement shall be applied in lieu of the good faith standard.
The State noted that Anama's employment was subject to a collective bargaining agreement that authorized the State to take disciplinary action based on "just and proper cause" and permitted employees or the union to file a grievance if they believed the agreement had been violated. The State asserted that after Anama was discharged, she failed to reverse the discharge through the grievance process. The State argued that this failure presumptively established that Anama's discharge was for just and proper cause and that Anama's workers' compensation claim was accordingly barred under HRS § 386-3 (c) .
The LIRAB apparently did not rule on the State's motion for summary judgment and proceeded to a trial on the State's appeal. In its Decision and Order, the LIRAB focused on whether Anama had suffered a compensable psychological injury as the result of the medication-theft complaint, of which she was informed on November 15, 2002. The LIRAB did not consider whether Anama suffered a compensable psychological injury due to the subsequent disciplinary action arising out of the patient abuse allegations. After limiting its consideration to whether Anama had suffered a compensable psychological injury as the result of the medication-theft complaint, the LIRAB concluded that Anama had not sustained a compensable injury.
The LIRAB noted that Dr. Streltzer, who submitted a report dated December 10, 2003, concurred with Dr. Guerrero that Anama had symptoms in February of 2003[2] that were consistent with a major depressive disorder. The LIRAB further noted, however, that Dr. Streltzer did not believe that Anama had a depressive disorder on November 15, 2002, but that this condition developed after Anama was placed under investigation for patient abuse and then notified of the State's decision to terminate her for patient abuse. The LIRAB found that with respect to the medication-theft complaint of which Anama was informed on November 15, 2002, "Dr. Streltzer opined that [Anama] may have been stressed and upset by this accusation, but this incident did not cause a depressive disorder or any condition that rose to the level of a clinical psychiatric disorder on November 15, 2002." The LIRAB also referred to Dr. Streltzer's opinion that Dr. Bacligfs November 25, 2002, diagnosis of adjustment disorder was not supported by clinical findings.
The LIRAB did not credit Anama's testimony that she was unable to function at work upon learning on November 15, 2002, of the medication-theft accusation. In making this credibility determination, the LIRAB relied, among other things, on Dr. Streltzer's opinion that Anama's psychological testing showed findings consistent with malingering and exaggeration of symptoms.
The LIRAB also did not credit Dr. Guerrero's opinion that suggested that Anama suffered a major depressive disorder on November 15, 2002. The LIRAB reasoned:
Dr. Gurrero did not begin treating [Anama] until December 30, 2002, after she was accused of and placed under investigation for patient abuse. The symptoms of major depressive disorder that Dr. Guerrero had documented in her December 30, 2002 report were not present when Claimant saw Dr. Baclig on November 25, 2002.
The LIRAB found that because Anama "has failed to establish that she sustained a stress condition on November 15, 2002, that rose to the level of a clinical psychiatric disorder[,]" "Anama" "failed to establish that she sustained a psychiatric injury on November 15, 2002."
The LIRAB concluded:
1. We conclude that [Anama] did not sustain a personal injury on November 15, 2002, arising out of and in the course of employment.
. . . .
The record shows that [Anama] was at most upset or worried over the accusation of theft of medication, but her complaints of worry or sadness to Dr. Baclig on November 25, 2002, were insufficient to meet the criteria for an adjustment disorder. Based on the opinions of Dr. Streltzer, we found that [Anama] failed to show that she sustained a psychiatric injury on November 15, 2002.
There being no injury, [Anama's] claim for compensation is denied.

DISCUSSION
Our analysis of whether the LIRAB erred depends on whether Anama's claim for psychological injury arising out her termination was barred by HRS § 386-3 (c) . It appears that Anama's most significant depressive symptoms did not arise until after she was informed of the patient abuse allegations and the State's decision to terminate her for those allegations.
In Mitchell v. State, Dep't of Educ., 85 Hawai`i 250, 254-56, 942 P.2d 514, 518-20 (1997), the Hawai`i Supreme Court held that an employee's stress-related injury resulting from disciplinary action taken by an employer in response to an employee's misconduct is a compensable injury under the workers' compensation law, where the employee's conduct that gave rise to the disciplinary action was within the course of employment. In response to Mitchell, the Hawai`i Legislature enacted HRS § 386-3(c), which precludes a claim for mental stress resulting solely from disciplinary action where the disciplinary action is taken in good faith by the employer or, if a different standard is set forth in a collective bargaining agreement, in compliance with that standard. 1995 Haw. Sess. Laws Act 234, § 6 at 607.
In its summary judgment motion, the State asserted that the standard for disciplinary action against Anama under the applicable collective bargaining agreement was "just and proper cause.[3] It further asserted that because Anama had not reversed her discharge through the grievance procedure under the collective bargaining agreement, her discharge was presumptively based on just and proper cause, and thus her claim for psychological injury attributable to the State's disciplinary action was barred by HRS § 386-3 (c) . The LIRAB, however, did not address or decide whether the disciplinary action taken against Anama was for just and proper cause.
If the disciplinary action against Anama was not taken for just and proper cause, then the LIRAB should have considered the psychological injury sustained by Anama as the result of her termination based on the patient abuse allegations in evaluating whether she sustained a compensable injury. The record makes clear that Anama's psychological injury claim encompassed not only injury attributable to the medication-theft complaint, but injury attributable to the disciplinary action arising from the patient abuse allegations. Indeed, the Director's decision specifically stated that Anama's claim included psychological injury resulting from "being falsely accused of performing an unauthorized rectal examination on a patient which resulted in her termination." And in concluding that Anama had sustained a compensable injury, the Director relied upon Dr. Streltzer's opinion that Anama's psychological injury was the result of her termination from work.
The LIRAB, however, restricted its inquiry to whether Anama had suffered a compensable psychological injury as the result of the medication-theft complaint. The LIRAB indicated that it did so because Anama identified her "date of injury" as November 15, 2008the date she was notified of the medication-theft complaint. Ordinarily, an accidental injury "results from a discrete eventthe time and place of which can be fixed[.]" Flor v. Holguin, 94 Hawai`i 70, 78, 9 P.3d 382, 390 (2000). But, the workers' compensation law does not condition an employee's right to compensation on his or her ability to pinpoint a single incident at work that caused the injury. See HRS § 386-3; c.f. Flor, 94 Hawai`i at 82-83, 9 P. 3d at 394-95 (discussing the date of injury in the context of an occupational disease) . Here, it is clear that Anama's claim of psychological injury in the form of a major depressive disorder included the detrimental effects attributable to her termination for patient abuse. In addition, the experts expressing an opinion in this case appear to be fairly uniform in opining that Anama suffered a major depressive disorder as a result of her termination for patient abuse.
If, on the other hand, the disciplinary action against Anama was taken for just and proper cause, then her claim of psychological injury based on the State's disciplinary action on the patient abuse allegations would be barred by HRS § 386-3(c). If that were true, we would reject the arguments raised by Anama on appeal and affirm the LIRAB's denial of her claim for benefits.
The LIRAB credited the opinion of Dr. Streltzer that Anama's report of being sad, worried, and upset by the medication-theft complaint did not meet the criteria for an adjustment disorder and that Anama's reaction was not beyond the expected reaction to the stressor. The LIRAB also found that Anama continued to work and was not impaired in her occupational or social functioning as a result of the medication-theft complaint. We conclude that these findings are not clearly erroneous and support the LIRAB's conclusion that Anama's stress condition attributable to the medication-theft complaint did not rise to the level of a compensable injury.
We likewise conclude that Anama was not entitled to relief on her claims that the LIRAB erred in 1) excluding an exhibit containing Dr. Guerrero's response to an examination conducted by psychologist Dana Zichittella, Ph.D.,[4] and 2) failed to consider evidence supporting Anama's position and instead credited evidence supporting the State's position. Anama submitted the exhibit containing Dr. Guerrero's response after the medical reports deadline set by the LIRAB. In any event, any error by the LIRAB in excluding the proffered exhibit was harmless because the LIRAB did not cite Dr. Zichittella's examination as support for its Decision and Order, Anama presumably could have called Dr. Guerrero as a witness at trial, and Anama does not explain how she was prejudiced by the exclusion of the exhibit.
Anama's claim that the LIRAB erred in failing to consider evidence supporting her position and instead credited evidence supporting the State's position is without merit since we give deference to the LIRAB's assessment of the credibility and weight of the evidence. Moi v. State, Pep't of Public Safety, 118 Hawai`i 239, 242, 188 P.3d 753, 756 (App. 2008).

CONCLUSION
For the foregoing reasons, we vacate the LIRAB's November 9, 2005, Decision and Order, and we remand the case with directions that the LIRAB determine whether the State's disciplinary action against Anama was taken for just and proper cause and for further proceeding consistent with this Memorandum Opinion. If the LIRAB determines that the State's disciplinary action against Anama was taken for just and proper cause, then the LIRAB shall enter an amended Decision and Order denying Anama's claim for benefits. If the LIRAB reaches the contrary conclusion, then it shall consider the effect on Anama of the disciplinary action taken against Anama in evaluating whether Amama sustained a compensable injury.
NOTES
[1] HRS § 386-3 provides in relevant part:

(a) If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.
Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.
. . . .
(c) A claim for mental stress resulting solely from disciplinary action taken in good faith by the employer shall not be allowed; provided that if a collective bargaining agreement or other employment agreement specifies a different standard than good faith for disciplinary actions, the standards set in the collective bargaining agreement or other employment agreement shall be applied in lieu of the good faith standard. For purposes of this subsection, the standards set in the collective bargaining agreement or other employment agreement shall be applied in any proceeding before the department, the appellate board, and the appellate courts.
(Emphasis added.)
[2] After an initial consultation on December 30, 2002, Dr. Guerrero began treating Anama on a regular basis on February 20, 2003. Dr. Guerrero's regular treatments began after Anama was notified of her termination.
[3] Anama did not contest that this was the appropriate standard under the collective bargaining agreement in responding to the State's summary judgment motion.
[4] The LIRAB, over Anama's objection, granted the State's motion to compel Anama to attend an examination by Dr. Zichittella.